The CONTINENTAL INSURANCE COM-
PANY, Appellant,

v.

Cameron B. LYNHAM and Adria C.
Lynham, Appellees.

No. 6339.

District of Columbia Court of Appeals.

Argued June 5, 1972.

Decided July 17, 1972.

Joseph T. Lilly, Washington, D. C., with whom W. B. Ewers, Baltimore, Md., was on the brief, for appellant.

Edgar T. Bellinger, Washington, D. C., for appellees. Polly W. Craighill, Washington, D. C., also entered an appearance for appellees.

Before HOOD, Chief Judge, and KELLY and FICKLING, Associate Judges.

FICKLING, Associate Judge:

The question presented by this appeal is whether, in the circumstances of this case, it was an abuse of discretion for the trial court to award attorney's fee to appellees as a part of costs. After a careful review of the record and pertinent precedents, we have concluded that the trial court abused its discretion.

Appellees are owners of a motor boat which was insured under an "all risk" marine insurance policy issued by appellant. On April 8, 1970, the vessel was found sinking at her dock by employees of the yacht basin. The trial court found that the sinking occurred as a result of a loose cap-nut on the sea-water filter.

Appellees first learned of the sinking upon their return from Europe on April 30, 1970. They immediately notified an agent of appellant and received from him, on May 1, certain forms to be executed. The forms were completed and returned the same day. A few days later appellant's adjuster inspected the vessel and suggested that appellees obtain three estimates of the cost of repairing the engine. However, when several mechanics refused to give estimates until they could examine the engine disassembled, appellant's agent agreed to permit the local Chrysler engine dealer to disassemble the engine, which was a Chrysler, and give an estimate in lieu of any other estimates. After disassembling and examining the engine, the Chrysler dealer concluded that it was impossible to restore it to its condition prior to the sink-

ing and advised that a new engine be used as a replacement. Appellant's adjuster also inspected the engine and agreed that it would be best to replace it. On May 28, 1970, the Chrysler dealer sent appellees an estimate showing the cost of repairing the engine ($1,765) and of replacing it ($2,996.72). Copies of this estimate were promptly forwarded to appellant's agent.

Appellees waited 10 days and received no response from appellant. They then authorized the Chrysler dealer to install the new engine and make other repairs. The repairs were completed on July 12, 1970. On July 13, appellees submitted bills and receipts to appellant for the repairs. Between July 13 and September 16, appellees received no word from appellant, although they made several telephone calls and wrote a letter dated September 1. On September 16, appellees telephoned appellant's agent and were advised that the claim was not yet settled because they had obtained a new engine rather than repairing the old one. Appellees then turned the matter over to an attorney and this suit was brought.

The suit sought recovery of the cost of repairs to the vessel—including installation of the new engine, interest, costs, attorney's fee, and punitive damages. After a non-jury trial the court awarded appellees the damages requested, costs, and attorney's fee of $1,000, but denied the request for punitive damages. This appeal challenges only the award of attorney's fee.

At the outset we note that the trial judge gave no precise explanation for the award of attorney's fee in this case. What we glean from the record is that while the trial court believed "that punitive damages in this case should not be awarded," it also believed that appellant had failed to diligently handle appellees' claim.[1] In other

1. "I've heard no evidence that there has been any effort by this company to say to this plaintiff, 'Well, you're simply not covered.' Not even to say to him the

loss under the policy, assuming that the company says it was covered, the loss under the policy is limited to the repair of this motor because of your failure to

words, the trial judge concluded that silence for approximately 3 months justified an award of attorney's fee.

> It is the rule in the District of Columbia that, absent a contract or statutory provision or a showing that the defendant's conduct was willfully and oppressively fraudulent, attorney's fees are not generally allowed as damages or costs. Wolf v. Cohen, 126 U.S.App.D.C. 423, 426, 379 F.2d 477, 480 (1967); Murphy v. O'Donnell, D.C.Mun.App., 63 A.2d 340, 342 (1948). . . . [McIntosh v. Aetna Life Insurance Co., D.C.App., 268 A.2d 518, 521 (1970).]

The United States Supreme Court has sanctioned this exception to the general rule "when overriding considerations of justice seemed to compel such a result." Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 718, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967). *See, e. g.,* Vaughan v. Atkinson, 369 U.S. 527, 530, 82 S.Ct. 997, 8 L.Ed.2d 88 (1962) (no investigation and silence as to claim that was "plainly owed").

The pertinent cases speak of conduct which is in bad faith, vexatious, wanton, or oppressive.[2] Thus, attorneys' fees have been permitted in cases involving unreasonable discontinuation of the defense of an "obviously helpless insured" after a "dubious investigation," Siegel v. William E. Bookhultz & Sons, 136 U.S.App.D.C. 138, 141–143, 419 F.2d 720, 724–725 (1969); the defense of suits which are baseless, Guardian Trust Co. v. Kansas City S. Ry., 28 F.2d 233, 240–246 (8th Cir. 1928); and suits brought to annoy or harass, In re Carico, 308 F.Supp. 815, 817–818 (E.D.Va. 1970); Gazan v. Vadsco Sales Corp., 6 F.Supp. 568 (E.D.N.Y.1934).

▬ Appellees point to no decision, and we have been unable to find one, in which conduct such as that of the insurer in this case has led to the award of attorney's fee. It is true that the insurer has a duty to process and pay claims expeditiously and in good faith, and that evidence as to the reasonableness or good faith of the insurer in refusing to pay is admissible in an action for attorney's fee based on vexatious refusal to pay. 3 J. Appleman, Insurance Law & Practice § 1612 (1967); 21 Appleman, *supra,* § 12405. However:

> The expression "in good faith" has been held to refer to a lack of a good or moral intent as the basis for refusing to pay a loss. Conversely, "bad faith" means any frivolous or unfounded refusal to pay; it is not necessary that such refusal be fraudulent. And if probable cause is shown why payment should have been made, an inference of bad faith might thereby be raised. [3 Appleman, *supra,* § 1612, at 368–69 (footnotes omitted).]

Our review of the record in the instant case convinces us that the conduct of the appellant was not in bad faith within the meaning of existing precedent. Negotiations proceeded normally on the claim until late May when the engine dealer's estimate was forwarded to appellant's agent. After waiting only 10 days, appellees ordered the dealer to make the necessary repairs. A total time of approximately 3½ months (May 28 to September 16) elapsed between the submission of the estimate and appellant's notification that it would refuse to pay for a new engine. While we in no way approve of appellant's silence for 3 months, we find no evidence that such conduct was based on an *unfounded* refusal to pay. Indeed, there were genuine disputes over whether the loss was covered by the policy and over the use of a new engine. Nor is there any evidence of fraud or of a failure to adequately investigate appellees'

---

mitigate damages. I have heard nothing. No evidence that this company has done anything. . . .

"This insurance company doesn't seem to me to have followed the least plain human decency . . . ." [Tr. at 89.]

2. Many of these cases are reviewed in Local No. 149 I. U., U. A., A. & A. I. W. v. American Brake Shoe Co., 298 F.2d 212 (4th Cir. 1962), and 6 J. Moore, Federal Practice ¶ 54.77 [2], at 1352–53 (2d ed. 1971).

claim. The result in each case depends on the particular facts of that case. In the circumstances here, we find no evidence that the conduct of appellant came within the exception to the general rule. *Compare* Wolf v. Cohen, 126 U.S.App.D.C. 423, 379 F.2d 477 (1967) (no evidence of fraud or oppression); Mutual Federal Savings & Loan Ass'n v. Johnson, 124 Ga.App. 68, 183 S.E.2d 50 (1971) (no evidence of furtive design or ill will). In the instant case failure to pay for the loss within 30 days after submission of proof of loss raised no issue of bad faith where there were honest disputes over coverage and amount of damages.[3]

Therefore, we hold that the trial court abused its discretion in awarding attorney's fee.

Reversed with instruction to set aside award of attorney's fee.

---

3. The insurance policy contained a clause that, "In case of loss, such loss to be paid in 30 days after proof of loss and proof of interest in the said vessel . . .."