Lester Stanley McDOWELL, and
Brenda Carol McDowell,
Plaintiffs,

v.

UNION MUTUAL LIFE INSURANCE
CO., a corporation, et al.,
Defendants.

No. CV 75–1506–F.

United States District Court,
C. D. California.

Nov. 19, 1975.

Daigneault, Abel & Daigneault, Torrance, Cal., for plaintiffs.

Gibson, Dunn & Crutcher, Los Angeles, Cal., for defendant Union Mut. Life Ins. Co.

Adams, Duque & Hazeltine, Los Angeles, Cal., for defendant Crown Life Ins. Co.

## MEMORANDUM OPINION

FERGUSON, District Judge.

Plaintiffs Lester and Brenda McDowell have filed a multi-million dollar action against Union Mutual Life Insurance Company and Crown Life Insurance Company claiming *inter alia* that one or both of these companies have wrongfully deprived them of benefits due under group medical insurance policies.

The relevant facts according to the allegations of the complaint are as follows:

(1) The plaintiff Lester McDowell for a number of years has been, and is, an employee of Texaco, Inc. and also a member of the Oil, Chemical and Atomic Workers International Union, Local 1–128.

(2) In connection with his employment and his union membership, Mr. McDowell and his dependents became entitled to protection under group medical insurance policies.

(3) From October 1, 1967 until June 30,[1] 1971, Mr. McDowell and his dependents were protected under the terms of a policy offered by the Union Mutual Life Insurance Company.

(4) Subsequent to June 30, 1971, Mr. McDowell and his dependents were protected under the terms of two policies offered by the Crown Life Insurance Company—a "Hospital and Surgical Benefit Policy" and a "Major Medical Benefit Policy."

(5) During 1971 and 1972, Mr. McDowell and his wife Brenda McDowell

---

1. At various points, the complaint inadvertently states the termination date to be June 31, 1971.

incurred major medical expenses in excess of $29,300.

(6) The complaint alleges that the medical expenses were an insured event within the meaning of the Union Mutual policy; it also alleges that the expenses were an insured event within the meaning of the Crown Life policy. But the complaint does not indicate what event gave rise to the medical expenses.

(7) The McDowells timely filed claims with both companies, and both companies have refused to pay.

(8) Union Mutual (according to the complaint) contends that it is not responsible for the expenses of Mrs. McDowell because she was not disabled prior to the termination of its policy (June 30, 1971) and further contends that expenses arising after the termination date are not covered by the policy.

(9) Crown Life (according to the complaint) contends that it is not responsible for the expenses of Mrs. McDowell because she was already totally disabled on the July 1, 1971 effective date of the Crown Life policies and because the policies did not provide coverage to any dependent who was disabled at the time of the effective date of the policy. The term disabled is defined to include anyone who "by reason of bodily injury, bodily sickness or mental infirmity, is prevented from performing his regular or customary work or duties . . . including work or duties of the household or for a nonprofit organization, club or social organization or from attending his school regularly."

(10) The McDowells, believing the insurance companies' activities to be fraudulent, in bad faith, and otherwise outrageous, filed a complaint against Crown Life and Union Mutual in the California Superior Court on or about March 18, 1975.

(11) On May 2, 1975, the defendants, by reason of diversity jurisdiction, removed the case to the federal court. The plaintiffs are citizens of the State of California; Union Mutual is incorporated in the State of Maine where it also maintains its principal place of business; Crown Life is incorporated in the Province of Ontario, Dominion of Canada, where it also maintains its principal place of business.

(12) The complaint contains nine "causes of action" which can be divided into five parts:

(a) Count one pleads for declaratory relief. In essence it asks for a specific declaration as to which of the defendants, if any, must pay benefits for the medical expenses.

(b) Counts two and three charge the companies with breach of contract and demand damages to cover not only the medical expenses, but also to cover damages resulting from the plaintiffs being driven into bankruptcy, including filing fees, legal expenses, and loss of credit reputation.

(c) Counts four and five charge the company with bad faith refusal to pay and apparently asks for the damages set out in counts two and three as well as compensation for the nervous and emotional breakdown of plaintiff Brenda McDowell, together with the legal expenses incurred in attempting to receive the benefits of the insurance policy. Moreover the complaint seeks to recover punitive damages in the sum of $5,000,000.

(d) Counts six and seven allege intentional infliction of emotional distress and seek to recover the same damages set out in causes of action four and five.

(e) Counts eight and nine claim that the companies fraudulently represented, at the time of subscription to their respective policies, that employees and dependents would be treated fairly; that these representations were false; and that the defendants knew them to be false at the time they were made. Thus compensatory damages for medical and legal expenses are sought together with punitive damages.

With the exception of some non-meritorious pleading arguments,[2] neither defendant questions the propriety of the claim for declaratory relief. Rather the defendants' motions center on claims two through nine.

### I. *Claims Two and Three.*

Essentially the defendants argue that the "extra contractual" damages (*i. e.,* any damages beyond the benefits due under the insurance policies with interest) sought in claims two and three are barred by the independent operation of three California statutes: Cal.Civ. § 3302; Cal.Civ.P. § 1021; Cal.Ins. § 10111.

### A. Cal.Civ. § 3302.

California Civil Code § 3302 provides that, "The detriment caused by the breach of an obligation to pay money only, is deemed to be the amount due by the terms of the obligation, with interest thereon." The defendants urge that this section prohibits the recovery of extra-contractual damages in this case by the terms of the statute and that such damages are allowable only on a showing of bad faith made in the context of a tort claim or on a showing of outrageous conduct made in the context of a claim of intentional infliction of emotional distress. A similar claim was recently rejected by the California Supreme Court in *Johansen v. California State Auto Association, Inter-Insurance Bureau,* 15 Cal.3d 9, 123 Cal.Rptr. 288, 538 P.2d 744 (1975). The court there reaffirmed that

> "an insurer who fails to accept a reasonable settlement offer within policy limits because it believes the policy does not provide coverage assumes the risk that it will be held liable for all damages resulting from such refusal, including damages in excess of applicable policy limits."

*Id.* at 12, 123 Cal.Rptr. at 290, 538 P.2d at 746, citing *Comunale v. Traders & General Insurance Co.,* 50 Cal.2d 654,

328 P.2d 198 (1958). The Court held this risk assumption to be applicable even if the insurer entertained a bona fide belief that the policy did not provide coverage: "[A]n insurer's 'good faith,' though erroneous, belief in non-coverage affords no defense to liability flowing from the insurer's refusal to accept a reasonable settlement offer." 15 Cal.2d at 16, 123 Cal.Rptr. at 292, 538 P.2d at 748, citing *Crisci v. Security Insurance Co.,* 66 Cal.2d 425, 429, 58 Cal.Rptr. 13, 426 P.2d 173 (1967).

It, of course, is arguable that *Johansen* is distinguishable. *Johansen* involved liability insurance in which the insurance company is called upon to attend to the claims of third parties against the insured. Since this case involves medical insurance, it does not involve a third party claim against the insured. Rather it involves the claim of the insured against the company. It can be argued that an insurance company's duty to settle (to pay money to a third party) in order to protect its insured from even greater liability is greater than its duty to timely pay money to its insured directly in order to prevent financial hardship and anguish to the insured. The difficulty with this position is that there is not a paragraph, a line, or even a hint in *Johansen* suggesting that the conception of an insurer's duty of good faith and fair dealing would be altered in contexts not involving liability insurance. Indeed in *Gruenberg v. Aetna Insurance Co.,* 9 Cal.3d 566, 573, 108 Cal.Rptr. 480, 485, 510 P.2d 1032, 1037 (1973), the court flatly refused to draw any such distinction, ruling instead that the duty respecting the handling of third party claims against an insured and the duty respecting the handling of claims of an insured against the company "are merely two different aspects of the same duty."

Thus the insurer is free to withhold payments under an insurance policy, but

---

**2.** The defendants' pleading arguments are without merit. Suffice it to say that the plaintiffs have successfully pleaded in the alternative and that state pleading cases are irrelevant (Fed.R.Civ.P. 81(c)).

if that withholding is wrongful, the insurer bears the burden of the foreseeable damages caused by its actions. This seems particularly appropriate in view of the special nature of insurance contracts. An insured does not contract

> " '. . . to obtain a commercial advantage but to protect [himself] against the risks of accidental losses, including the mental distress which might follow from the losses. Among the considerations in purchasing . . insurance, as insurers are well aware, is the peace of mind and security it will provide . . . .' " *Fletcher v. Western National Life Insurance Co.*, 10 Cal.App.3d 376, 404, 89 Cal. Rptr. 78, 95 (1970) (disability insurance), quoting *Crisci v. Security Insurance Co.*, supra, at 434, 58 Cal.Rptr. 13, 426 P.2d 173.

The lesson of the line of cases from *Comunale* to *Johansen* is that insurance companies that erroneously withhold payments from their insureds, and deprive them of the security they bargained for, must be held to account for the consequences of their conduct. The risks flowing from error must be placed on the insurance company, not the insured. California has learned that contrary rules place disproportionate bargaining power in the hands of the insurance companies and permit them to compel the acceptance of unreasonable settlements.

■ But defendants contend that liability insurance policies can be distinquished from medical policies because liability insurance policies entail the duty to defend and thus are not "contracts" to pay money "only" within the meaning of § 3302. The first difficulty with this argument is that it misquotes the section. The section deals with the breach of "obligations" to pay money only, not the breach of contracts to pay money only. The section says nothing about other promises which may have

been made in the same contract. Moreover, the *Johansen* court stressed that, " 'The decisive factor in fixing the extent of . . . liability is not the refusal to defend, it is the refusal to accept an offer of settlement within policy limits.' " 15 Cal.3d at 17, 123 Cal. Rptr. at 293, 538 P.2d at 749, quoting *Comunale, supra*, at 659, 328 P.2d 198. Indeed, in *Johansen* the court did not find a breach of the duty to defend. Nor is it a novel recognition, that the limitations of § 3302 do not apply to promises to pay money when the promisor has special reason to be aware of the special function that the money was intended to serve. *See Reichert v. General Insurance Co.*, 68 Cal.2d 822, 851, 69 Cal.Rptr. 321, 442 P.2d 377 (1968) (Peters, Tobriner & Mosk, JJ. dissenting), citing *Hunt v. United Bank & Trust Co.*, 210 Cal. 108, 291 P. 184 (1930).[3]

### B. Cal.Civ.P. § 1021.

■ The defendants argue that the plaintiffs' demand for the legal expenses involved in the plaintiffs' bankruptcy is foreclosed by the provisions of § 1021 of the *Code of Civil Procedure* which states that, "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties . . . ." The defendants advance the same argument with respect to the plaintiffs' demand for attorney's fees under the other causes of action.

The question of the propriety of an award of attorney's fees in the insurance context was recently canvassed in *Mustachio v. Ohio Farmers Insurance Co.*, 44 Cal.App.3d 358, 118 Cal.Rptr. 581 (1975). There the insured sought to recover legal expenses incurred in connection with the settlement of an insurance claim. After the settlement had been achieved, the insured filed a complaint alleging a breach of the de-

---

3. Justice Peters has also argued persuasively that section 3302 should only give rise to a rebuttable presumption in those situations to which it is applicable. *Reichert, supra,* at 850–53, 69 Cal.Rptr. 321, 442 P.2d 377.

fendants' covenant of good faith and fair dealing. The plaintiff did not seek to recover his legal expenses in the "bad faith" action, but only sought to recover the legal expenses incurred in connection with his attempt to secure the benefits of the policy. Justice Kaus, speaking for a unanimous court, observed that when the insurance company breaches its covenant of good faith and fair dealing, it becomes financially responsible for all losses incurred because of that breach, including legal expenses. The general rule that attorney's fees are not recoverable was specifically found to be inapplicable. Thus *Mustachio* holds that the insured is entitled to recover attorney's fees needed to secure the benefits of the policy and attorney's fees foreseeably resulting from the withholding of the benefits of the policy.

█ The defendants make much of the fact that the plaintiff in *Mustachio* did not seek attorney's fees in the action to establish bad faith. But the language of the opinion makes it clear that when the insurer's conduct makes it reasonable "for the insured to seek the protection of counsel, the insurer is responsible for that item of damages." *Id.* at 363, 118 Cal.Rptr. at 584. And the opinion reemphasizes the fact that peace of mind and security are among the benefits sought in purchasing a policy. *Id.* On the other hand, *Mustachio* does not authorize an award of attorney's fees incurred in an attempt to secure punitive damages. Punitive damages by definition are not compensatory in character and are not among the benefits sought in purchasing a policy.

The defendants counter by arguing that *Mustachio* is wrong and that it is inconsistent with earlier authority. It is, however, the most recent expression of a California appellate court in this rapidly developing area of the law; it is well reasoned and in harmony with recent California trends. This court has no difficulty in accepting the authority of its position.

█ On the other hand, *Mustachio* is arguably distinguishable. *Mustachio*

reached its conclusion in the context of a charge of tortious bad faith. Counts two and three allege no bad faith. Nevertheless the *Johansen* decision has made clear that bad faith need not be shown to establish a breach of the covenant of good faith and fair dealing. Wrongful withholding of benefits coupled with a refusal to pay for the consequences of that withholding is sufficient to establish a breach of that covenant. 15 Cal.3d at 12, 14–15, 16 n. 5, 123 Cal.Rptr. 288, 538 P.2d 744. As *Johansen* emphasized, insurers who withhold benefits do so at their own risk, not at the expense of the insured.

### C. Cal.Ins. § 10111.

█ The defendants are on firmer ground when they invoke the protections of Insurance Code § 10111. It provides that "In life or disability insurance, the *only* measure of liability and damage is the sum or sums payable in the manner and at the times as provided in the policy to the person entitled thereto." (emphasis added). The plaintiffs do not deny that the group medical insurance policies involved here are disability policies within the special meaning of the Insurance Code. *See* Cal.Ins. § 106. Instead the plaintiffs assert that the defendants' contention was met "head on" in *Fletcher v. Western National Life Insurance Co., supra,* and rejected.

In *Fletcher,* the court held that, "When the case sounds in tort, Insurance Code, section 10111 does not restrict recovery to the amounts due under the policy." 10 Cal.App.3d at 400–01, 89 Cal.Rptr. at 93, citing *Wetherbee v. United Insurance Co. of America,* 265 Cal.App.2d 921, 927–29, 71 Cal.Rptr. 764 (1968). The *Fletcher* court did not and could not decide the interpretation of § 10111 in a contract action. The question was not before it, and the question has simply not been passed on by a California appellate court.

It is significant that nothing in the *language* of § 10111 justified the *Fletcher* decision. The language of the section does not distinguish between tort actions or contract actions. In this sense,

§ 10111 is quite unlike Civil Code § 3294 which denies the availability of punitive damages in contract actions. Thus if the *Fletcher* holding is to be justified on a principled basis, it must be understood to mean that the legislature did not intend that the insured's damages were to be arbitrarily confined to the amount set out in the policy when an insurance company unreasonably withholds benefits due.

Clearly in enacting § 10111 the legislature exhibited an intention to grant life and disability insurers with special litigation advantages not conferred on other insurers, but *Fletcher* stands for the proposition that § 10111 does not confer a license on insurers to play fast and loose with the reasonable expectations of those they have agreed to assist. In other words, when insurers unreasonably withhold benefits, the legislature did not intend that the protections of § 10111 be applied. Nothing in the language of § 10111 leads the court to believe that the scope of the section depends on whether the plaintiffs' action is brought in tort or contract. If the legislature intended to produce such anomalous results, it surely had the ability to express its intention in clear language. Thus when a disability insurer by unreasonable conduct forfeits the protections of § 10111, the appropriate measure of damages in a contract action is expressed in § 3300 of the Civil Code: "For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this Code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom."

Since causes of action two and three presently do not allege that the defendants unreasonably withheld payments, the extra contractual damages there

sought are barred by § 10111. The motion to dismiss and/or strike the prayer for those damages is granted with leave for the plaintiffs to amend the pleading to allege that defendants wrongfully *and* unreasonably withheld benefits due.

## II. *Claims Four and Five.*

### A. Personal injury claims.

■ The defendants contend that the personal injury claims of defendant are barred by the "personal injury" statute of limitations which states in pertinent part: "An action . . . for injury to or for the death of one caused by the wrongful act or neglect of another . . . ." (Cal.Civ.P. § 340(3)) shall be brought within one year.[4] Plaintiffs, on the other hand, maintain that the claim is controlled by California Code of Civil Procedure § 337(1) which provides that an action based "upon any contract, obligation or liability founded upon an instrument in writing. . . ." shall be brought within four years.

Defendants argue that § 340(3) embraces any wrongful act resulting in personal injury whether that act be a contractual breach or the violation of a tort duty. In support of this position, the defendants point to a long line of California cases involving general negligence, products liability, or medical malpractice[5] in which the courts have consistently applied § 340(3) despite a claim that a breach of contract or warranty, express or implied, was involved. The problem presented here is to determine whether those cases truly stand for the rule that all personal injuries fall under that section or whether they instead stand for the notion that the gravamen of those actions is in tort. In other words, is § 340(3) a personal injury statute of limitations or a tort-personal injury statute of limitations?

Some cases have taken the former view. *Basler v. Sacramento Electric Gas & Ry. Co.,* 166 Cal. 33, 134 P. 993

---

4. The discussion, *infra*, also disposes of Crown Life's attack on the credit reputation damages included in count two.

5. The statute of limitations for medical malpractice was amended in 1970 and again in 1975. Cal.Civ.P. § 340.5.

(1913); *Rodibaugh v. Caterpillar Tractor Co.*, 225 Cal.App.2d 570, 37 Cal.Rptr. 646 (1964); *Lai Wum Chin Mock v. Belfast Beverages, Inc.*, 193 Cal.App.2d 770, 14 Cal.Rptr. 602 (1961); *Rubino v. Utah Canning Co.*, 123 Cal.App.2d 18, 266 P. 2d 163 (1954); *Huntley v. Zurich General Accident and Liability Insurance Co.*, 100 Cal.App. 201, 280 P. 163 (1929). Other cases appear to have taken the latter view. *Chalmers v. Southern Pacific Co.*, 8 F.2d 480 (9th Cir. 1925); *Stafford v. Shultz*, 42 Cal.2d 767, 270 P.2d 1 (1954); *Huysman v. Kirsch*, 6 Cal.2d 302 (1936); *Harding v. Liberty Hospital Corp.*, 177 Cal. 520, 171 P. 98 (1918); *Krebenios v. Lindauer*, 175 Cal. 431, 166 P. 17 (1917); *Allred v. Bekins Wide World Service, Inc.*, 45 Cal.App.3d 984, 120 Cal.Rptr. 312 (1975); *Costa v. Regents of University of Cal.*, 116 Cal.App. 2d 445, 254 P.2d 85 (1953); *Ehlen v. Burrows*, 51 Cal.App.2d 141, 124 P.2d 82 (1942); *Gum v. Allen*, 119 Cal.App. 293, 6 P.2d 311 (1931); *Wetzel v. Pius*, 78 Cal.App. 104, 248 P. 288 (1926). Still other cases are ambiguous. *See, e. g., Zellmer v. Acme Brewing Co.*, 184 F.2d 940 (9th Cir. 1950); *Howe v. Pioneer Manufacturing Co.*, 262 Cal.App.2d 330, 68 Cal.Rptr. 617 (1968).

Clearly the various attempts to interpret § 340(3) have not produced a chorus of agreement. The leading case for the defendants' reading of the section is *Rubino v. Utah Canning Co.*, 123 Cal. App.2d 18, 266 P.2d 163 (1954). There the Court of Appeals, after canvassing most of the decisions to that date, maintained that:

> "It seems apparent that the legislative intent behind subdivision 3, section 340, Code of Civil Procedure, was not to restrict its coverage to tort actions independent of any contractual relation, but to provide a limitation of one year where personal injury or death results, regardless of the tort, contract or breach of express or implied warranty aspect of the case." *Id.* at 26, 266 P.2d at 168.

Of course, the language of *Rubino* was wholly unnecessary to decide the case since earlier authority had already determined that the gravamen of the products liability cases lies in tort. None of the cases cited by the defendants needed to determine the ultimate scope of § 340(3) as it applies to bad faith insurance contract actions resulting in personal injury. Moreover every California Supreme Court case after 1913 has characterized the line of cases in question as standing for the limited reading urged by the plaintiff.

Indeed four years after the *Rubino* foray, the California Supreme Court in *Comunale v. Traders & General Insurance Co., supra*, reaffirmed the characterization urged by plaintiff:

> "[I]t is the rule that where a case sounds both in contract and tort the plaintiff will ordinarily have freedom of election between an action of tort and one of contract. . . . An exception to this rule is made in suits for personal injury caused by negligence, where the tort character of the action is considered to prevail. . . ." *Id.* at 663, 328 P.2d at 203 citing *Huysman v. Kirsch, supra; Krebenios v. Lindauer, supra.*

Thus, though opinions of the Courts of Appeal have expressed differing views, the California Supreme Court for many years has expressed a consistent view with respect to this statute and has yet to accept the *Rubino* characterization.[6]

Thus, though the issue is far from clear cut, *Comunale* suggests that the applicability of § 340(3) turns on the question of whether or not the tort character of the action is considered to prevail.

■ In *Comunale*, the court held that the plaintiff was entitled to the benefit of the four year contract statute of limitations in a bad faith insurance context, stating that the rule that the tort character of the action prevails in a personal injury action based upon neg-

---

6. For another attack on the *Rubino* line of cases, see 2 B. Witkin, *California Procedure*, Actions § 313, at 1156 (2d ed. 1970).

ligence did not apply in "cases, like the present one, which relate to financial damage . . . ." *Id.* at 663, 328 P.2d at 203. This language, of course, implies that the tort character of the action might be considered predominant if personal injuries were at issue. But this implication seems to have been put to rest in *Crisci v. Security Insurance Co.*, 66 Cal.2d 425, 58 Cal.Rptr. 13, 426 P.2d 173 (1967). There in discussing the propriety of an award of $25,000 in compensation for mental suffering caused by an insurance company's bad faith, the court said:

> "In *Comunale* . . . it was held that an action *of the type involved here* sounds in *both* contract and tort and that 'where a case sounds both in contract and tort the plaintiff will ordinarily have freedom of election between an action of tort and one of contract. . . .' Although this rule was applied in *Comunale* with regard to a statute of limitations, the rule is *also* applicable in determining liability." *Id.* at 432, 58 Cal.Rptr. at 18, 426 P.2d at 178, quoting 50 Cal. 2d at 663, 328 P.2d 198 (emphasis added).

Similarly in *Gruenberg v. Aetna Insurance Co.*, 9 Cal.3d 566, 573, 108 Cal. Rptr. 480, 484, 510 P.2d 1032, 1036 (1973), the court emphasized that the breach of the duty of good faith and fair dealing "sounds in both contract and tort . . . ." Moreover it since has become clear that an award of damage for emotional distress can properly be based on a contract theory. In *State Farm Mutual Automobile Insurance Co. v. Allstate Insurance Co.*, 9 Cal.App.3d 508, 527, 88 Cal.Rptr. 246, 258 (1970), the court expressly held that an award for pain and distress "was proper even under a breach of contract theory." Since the bad faith cause of action sounds in both contract and tort, and since insurance contract damages can appropriately be imposed in compensation for mental distress, this court can-

not say that the tort character of the action predominates. The defendants' § 340(3) argument is rejected. Plaintiffs can properly found their bad faith contract claim on § 337(1) and its four year statute of limitations. provision.

**B. Punitive damage claims.**

■ Defendants maintain that an action based on contract cannot give rise to a claim for punitive damages. Plaintiffs respond that the courts in California have found authority to award punitive damages in such actions. But none of the cases cited by the plaintiffs support this position. In *Crisci* and *Gruenberg,* for example, the court found that the plaintiffs had elected to sue in tort, and the court thus upheld awards for punitive damages even though the tort involved was a tortious breach of contract. But the courts in California do not uphold awards for punitive damages in contract actions. The unqualified language of *Crogan v. Metz*, 47 Cal. 2d 398, 405, 303 P.2d 1029, 1033 (1956) applies here: "[Punitive damages] may not be granted in an action based on a breach of contract even though the defendant's breach was wilful or fraudulent." Indeed this result follows from the language of Civil Code § 3294, "In an action for the breach of an obligation *not arising from contract*, where the defendant has been guilty of oppression, fraud, or malice, express or implied, the plaintiff . . . may recover damages for the sake of example and by way of punishing the defendant." (emphasis added).

■ Alternatively the plaintiffs argue that their bad faith cause of action can be upheld on a tort theory. Assuming that plaintiffs' cause of action were read to arise in tort,[7] punitive damages are appropriately pleaded if, but only if, the complaint can survive an attack based on the statute of limitations.

■ The defendants first maintain that § 340(1) of the Code of Civil Pro-

---

7. Of course, the plaintiffs must elect to sue either in tort or contract. They cannot sue in both tort and contract on the breach of the covenant of good faith and fair dealing.

cedure bars a punitive damage claim. It provides that, "An action *upon a statute* for a penalty or forfeiture, when the action is given to an individual . . . ." (emphasis added) must be brought within one year. This contention is entirely without merit. It supposes that the plaintiffs' action is brought upon Civil Code § 3294 which, of course, authorizes an award of punitive damages. But this argument mistakes the central philosophy underlying the statute of limitations, namely that, "[T]he nature of the right sued upon, not the form of action or the relief demanded, determines the applicability of the statute of limitations." *Jefferson* v. *J.E. French Co.*, 54 Cal.2d 717, 718, 7 Cal.Rptr. 899, 900, 355 P.2d 643, 644 (1960).

The fact is that no action is brought upon § 3294. If the defendants' argument were adopted, one would have to suppose, for example, that the three year statute of limitations applicable to frauds (Cal.Civ.P. § 338(4)) would not authorize an award of punitive damages beyond one year from the time the statute had begun to run. But as Witkin points out, the fraud statute of limitations "with its favorable accrual rule, is . . . applied to any form of action, *for any kind of relief.*" B. Witkin, 2 *California Procedure*, Actions § 333 (2d ed. 1970) (emphasis added). Accordingly, the courts of California have consistently applied the three year statute of limitations to actions involving fraud even when exemplary damages were sought in the action. *Hobart v. Hobart Estate Co.*, 26 Cal.2d 412, 159 P.2d 958 (1945); *Knapp v. Knapp*, 15 Cal.2d 237, 100 P.2d 759 (1940); *Mortimer v. Loynes*, 74 Cal.App. 2d 160, 168 P.2d 481 (1946). None of these cases has suggested that an action seeking punitive damages is brought upon section 3294, nor do the defendants cite any authority to support that dubious notion. Section 3294 authorizes damages in some actions; it never authorizes actions.

The more difficult question is to determine the statute of limitations applicable to the bad faith cause of action grounded in tort. California courts have struggled for some time to define the nature of this tort. They appear to have settled on the notion that the gravamen of the bad faith cause of action in tort is the tortious interference with an intangible property interest. In *Mustachio v. Ohio Farmers Insurance Co.*, *supra*, at 363, 118 Cal.Rptr. at 584 the court explained: " '[S]uch conduct on the part of a[n] . . . insurer constitutes a tortious interference with a protected property interest of its insured for which damages may be recovered to compensate *for all detriment proximately resulting therefrom,* including economic loss as well as emotional distress resulting from the conduct or from the economic losses caused by the conduct, and, in a proper case, punitive damages.' " (emphasis in original), quoting *Fletcher, supra*, at 401–02, 89 Cal.Rptr. 78 and citing *Gruenberg, supra*, at 574–75, 108 Cal.Rptr. 480, 510 P.2d 1032.

But California courts have yet to address the question of which statute of limitations applies to this tort. Ordinarily, tortious violations of personal property rights are controlled by § 338 (3) of the Code of Civil Procedure, but the courts have uniformly held that section to be inapplicable to actions involving the invasion of intangible property interests. *See, e. g., TU-VU Drive-In Corp. v. Davies*, 66 Cal.2d 435, 58 Cal.Rptr. 105, 426 P.2d 505 (1967); *Italiani v. Metro-Goldwyn Mayer Corp.*, 45 Cal.App.2d 464, 114 P.2d 370 (1941); *Stark v. Pioneer Casualty Co.*, 139 Cal. App. 577, 34 P.2d 731 (1934).

Instead the tortious invasion of intangible property interests is to be controlled by the two year statute of limitations covering actions upon "a contract, obligation or liability *not founded upon an instrument in writing* . . . ." Cal.Civ.P. § 339(1) (emphasis added). *See, e.g., TU–VU Drive-In Corp. v.*

*Davies, supra; Italiani v. Metro-Goldwyn Mayer Corp., supra; Stark v. Pioneer Casualty Co., supra.*

There is, however, a respectable argument for the conclusion that the tortious bad faith action should be controlled by the four year provision involving actions upon "any contract, *obligation or liability founded upon an instrument in writing. . . ."* Cal.Civ.P. § 337 (1) (emphasis added). The very language of the section implies that there are noncontractual obligations which fall within the scope of the section. And as the California Supreme Court explained in *Comunale, supra,* 50 Cal.2d at 662, 328 P.2d at 203, "The promise which the law implies as an element of the contract is as much a part of the instrument as if it were written out." Thus it would seem natural to conclude that the tortious bad faith cause of action is based upon an obligation founded upon a written instrument and that a section dealing with obligations not founded upon a written instrument has no bearing. Moreover such a reconciliation of the sections would seem to comport with their underlying philosophy which appears to be that if there is a writing in permanent form evidencing the existence of an agreement and the terms and obligations thereof, it is appropriate that a longer statute of limitations apply.

Nonetheless, California courts have treated § 339(1) as a "catch-all for unusual tort actions not otherwise provided for." 2 Witkin, *California Procedure,* Actions § 329, at 1171–72 (2d ed. 1970). Throughout the cases, the California courts have assumed that all tort actions involving invasions of intangible property are controlled by § 339(1) even in circumstances where a strong argument

could be made for the conclusion that the obligation involved was founded upon a written instrument. *See, e.g., Comunale, supra,* at 663, 328 P.2d 198 (bad faith insurance claim); *L.B. Laboratories, Inc. v. Mitchell,* 39 Cal.2d 56, 63, 244 P.2d 385 (1952) (accountant malpractice); *Benard v. Walkup,* 272 Cal.2d 595, 77 Cal.Rptr. 544 (1969) (legal malpractice). However difficult it is to reconcile the position taken in these cases with the language and philosophy of sections 337(1) and 339(1), that position appears to be the law in California—at least for the present.

Therefore, since the refusal to pay, which was alleged to be in bad faith, occurred at least before December, 1972 (the complaint alleges that after the wrongful refusal to pay, the plaintiffs filed bankruptcy in December 1972), and since the complaint in state court was not filed until March, 1975, any bad faith tort action is barred.

■ Plaintiffs' contention that the bad faith cause of action accrues afresh each day as if it were a series of individual torts or breaches of contract is unsupported by the case law of any jurisdiction. *See* Annot. 68 A.L.R.2d 892 (1959). The motion to dismiss and/or strike the claim for punitive damages will be granted.[8]

### III. *Claims Six and Seven.*

■ The defendants maintain that the claim for intentional infliction of emotional distress is barred by the one year personal injury statute of limitations. Cal.Civ.P. § 340(3). Plaintiffs' position that these claims are not "personal injury" actions is simply incorrect. *Huntley v. Zurich General Accident and Liability Insurance Co.,* 100 Cal.App. 201,

---

**8.** Since the tort cause of action is barred by the statute of limitations, there is no necessity to reach the question of whether the personal injury one year statute of limitations applies to a (bad faith) tortious invasion of property action which seeks to recover damages for emotional distress. The cases have opined that the action is a single cause of action for the invasion of a property interest.

*See, e. g., Fletcher, supra,* at 402, 89 Cal.Rptr. 78. Whether or not the fact that this "single" cause of action cannot be split also means that only one statute of limitations should apply has yet to be decided. *But see Purcell v. Colonial Ins. Co.,* 20 Cal.App.3d 807, 814–15, 97 Cal.Rptr. 874 (1971) (dictum) ; *cf. Holmes v. David H. Bricker, Inc.,* 70 Cal.2d 786, 76 Cal.Rptr. 431, 452 P.2d 647 (1969).

280 P. 163 (1929). The motion to dismiss claims six and seven will be granted.

### IV. *Claims Eight and Nine.*

 Defendants contend that claims eight and nine are barred by § 338 of the Code of Civil Procedure which provides that an action for fraud must be brought within three years provided that the aggrieved party has discovered the facts constituting the fraud. The fraud alleged is that the companies induced the insured to enter into the policy even though the companies well knew they intended to violate their promises of fair dealing. Nothing in the complaint alleges the time of the discovery of the facts disclosing the alleged fraud. Thus it cannot be said from the face of the complaint that § 338 bars the action.

On the other hand, defendants are correct in stating that the plea for medical damages is barred by § 340(3). *Rubino, supra; cf. Steen v. Whittington,* 9 Cal.App.2d 445, 50 P.2d 118 (1935). The motion to dismiss and/or strike the claim for those damages will be granted.

It is therefore ordered that:

1. The motions to dismiss and/or strike portions of claims two through nine are granted:

    a. with respect to the extra contractual damages sought in claims two and three with leave to amend in thirty days;

    b. with respect to the punitive damages sought in claims four and five with prejudice;

    c. with respect to all damages sought in claims six and seven with prejudice;

    d. with respect to the medical damages sought in claims eight and nine with prejudice;

    e. with respect to any claims for attorneys' fees incurred to collect punitive damages with prejudice.

The balance of the defendants' motions and arguments are without merit and are hereby denied and rejected.