Loretta E. **WASHINGTON**, Plaintiff,

v.

**GROUP HOSPITALIZATION, INC.,** et al., Defendants.

Civ. A. No. 82–2151.

United States District Court, District of Columbia.

May 8, 1984.

Dean E. Swartz, Ronald Simon, Washington, D.C., for plaintiff.

Kevin W. Carmody, Washington, D.C., for defendants.

## MEMORANDUM ORDER

HAROLD H. GREENE, District Judge.

Plaintiff brought this action against Group Hospitalization, Inc. and Medical Service of the District of Columbia, both providers of medical health benefits, for breach of contract and bad faith refusal to pay insurance claims, seeking both compensatory and punitive damages. Defendants have moved for summary judgment. For the reasons stated below, the motion will be denied.

Plaintiff, an employee of the City of Alexandria, Virginia since 1978, decided to transfer her health insurance coverage to that offered by the defendants in the spring of 1981. On May 19, 1981, plaintiff filled out the appropriate card to enroll in the health benefits program in effect at that time, to be effective July 1, 1981. She provided all the information the enrollment card requested with one exception—she failed to state whether she was currently or had recently been enrolled in health care coverage through Blue Cross and Blue Shield, a Health Maintenance Organization (HMO), or other insurance carrier.[1] Information concerning prior health coverage is important because under the program persons who do not apply for coverage with defendants when they first become eligible, i.e., when they begin employment, must satisfy a ten-month waiting period before they will receive benefits for treatment of conditions existing before the effective date of the contract. In fact, plaintiff had been enrolled in the Kaiser-Georgetown Health Plan, a HMO, prior to her enrollment with defendants, and the ten-month waiting period for preexisting conditions therefore did not apply to her.

On July 18, 1981, plaintiff was hospitalized for eleven days for treatment of her chronic diabetic condition, and a little over

---

[1.] Plaintiff concedes that she did not fill in the appropriate blank, explaining that she was confused by the card because "DO NOT WRITE IN THIS SPACE" appeared in close proximity to the request for information concerning prior health coverage.

a week after being discharged, she was again hospitalized, this time for gynecological problems. Plaintiff applied to defendants for health benefits as provided by the contract, but her applications were denied on the ground that both the July and August hospitalizations involved treatment of pre-existing conditions. In October and November 1981, defendants again reviewed plaintiff's case, consulting with several physicians. With one exception,[2] defendants confirmed their earlier determination that benefits were properly denied because the treatment was for pre-existing conditions.

During and after plaintiff's hospitalizations, defendants conducted a total of six medical reviews of plaintiff's case—four by registered nurses and two by physicians. Following these investigations, defendants informed plaintiff that her benefits were denied because her condition existed before July 1, 1981. However, at no time did defendants explain that they were denying coverage because plaintiff had not transferred from a qualified health care plan nor did they ever ask plaintiff whether she had transferred from such a plan. They simply assumed this to be so because of the blank left on plaintiff's enrollment card.

On April 22, 1982, plaintiff's employer notified defendants that plaintiff had had a policy with Kaiser-Georgetown prior to enrolling with defendants; defendants then changed plaintiff's enrollment card to reflect this fact; on May 26 and 27, 1982, they notified Arlington Hospital that benefits for plaintiff's July and August 1981 hospitalizations were approved; and they then proceeded to pay the treating physicians.

During the interim, Arlington Hospital had been attempting to collect from plaintiff the money due for its services. The negotiations between plaintiff and the Hospital were far from amicable, but ultimately, plaintiff and the Hospital may have entered into an agreement under which plaintiff would make monthly payments of $40 to the Hospital commencing February 10, 1982. In spite of this agreement, however, the Hospital eventually sued plaintiff for her medical bills.

On August 2, 1982, plaintiff filed this action against these defendants alleging in one count breach of contract and in another bad faith refusal to pay insurance claims, and she seeks damages both for hospital bills allegedly still unpaid and for emotional distress. Defendants have moved for summary judgment.

## I

Defendants argue that, because they eventually paid plaintiff's hospital and doctor bills, there has been no breach of contract, and that, in any event, the request for $100,000 in damages for "mental and emotional distress, worry, anxiety, loss of sleep, and lost time from her occupational duties in order to pursue the proper disposition of her claims" must be denied because such damages were not contemplated or foreseeable by the parties at the time of contracting. See *Hadley v. Baxendale*, 9 Ex. 341, 156 Eng.Rep. 145 (1845); *Mark Keshishian, etc. v. Washington Square*, 414 A.2d 834, 841 (D.C.App.1980). See also, Restatement of the Law 2d, Contracts, 2d Vol. 3 § 353 at 149. However, summary judgment cannot be granted on this basis.

■ It appears that money may still be due to plaintiff under the contract.[3] De-

---

**2.** Dr. Leonard Weyl, who conducted the last medical review of plaintiff's case, advised defendants that benefits for the July hospitalization should remain rejected but that they divide plaintiff's request for benefits for the August hospitalization. Defendants state that, due to an administrative error in processing, this information was never transmitted to Arlington Hospital.

**3.** Plaintiff alleges that the following sums are still due under the contract for medical services she received: (1) $579 and $590 to Dr. Espinal for services rendered in connection with plaintiff's July and August hospitalizations, respectively; (2) $266.20 to the hospital radiologist and anesthesiologist; and (3) approximately 80 percent of Dr. Solano's $2,500 bill for surgical services rendered during plaintiff's August hospitalization.

fendants' assertion that plaintiff is free to submit these additional amounts under the major medical portion of her contract, and that once such a submission is made, they will consider such claims for payment, is countered by plaintiff with the objection that it is violative of public policy to require her to resubmit doctors' bills and medical records which defendants have had for over two years. The Court is unable to determine on this record whether defendants' resubmission request is unduly burdensome, or why, if defendants have all the relevant information, plaintiff needs to resubmit the doctors' bills and other medical records at all. These are appropriately issues for the trier of facts, and summary judgment is inappropriate at this time on the breach of contract claim.[4]

## II

Many jurisdictions have recognized a cause of action in tort for the bad faith refusal of an insurer to pay. The District of Columbia is no exception. See *Continental Insurance Co. v. Lynham*, 293 A.2d 481, 483 (D.C.App.1972). Individuals purchase insurance to protect themselves against calamities. The insured is generally in a vulnerable economic and emotional position when such an event occurs. Accordingly, it is said, the entire purpose of insurance would be defeated if an insurance company could refuse or fail to pay a valid claim without justification. *Noble v. National American Life Insurance Co.*, 128 Ariz. 188, 624 P.2d 866, 868 (1981). Courts and legislatures have therefore imposed a legal duty upon insurance companies to process and pay claims expeditiously and in good faith. The breach of such duty gives rise to a tort.

To recover under the tort of bad faith refusal to pay, plaintiff must show that defendant did not have a reasonable basis for denying benefits under the policy and that it knew or recklessly disregarded its lack of a reasonable basis when it denied the claim.[5] *Noble v. National American Life Insurance Co., supra*, 624 P.2d at 868; *Anderson v. Continental Insurance Co.*, 85 Wis.2d 675, 271 N.W.2d 368, 376–77 (1978). The District of Columbia Court of Appeals has defined the tort as "any frivolous or unfounded refusal to pay; it is not necessary that such refusal be fraudulent. And if probable cause is shown why payment should have been made, an inference of bad faith might thereby be raised." *Continental Insurance Co. v. Lynham*, 293 A.2d 481, 483 (D.C.App.1972) (quoting 3 Appleman, *Insurance Law & Practice*, § 1612 at 368–69 (1967)).

In the case at bar, defendants concede that their initial denial of benefits under the contract was mistaken because they erroneously assumed, based solely upon the blank on plaintiff's enrollment card, that she was not covered by a qualified health care plan before enrolling in the defendants' program. Thus, the question is whether defendants knew or recklessly disregarded their lack of a basis.

Defendants concede that they never asked plaintiff whether or not she had prior health care coverage. Had they made such a minimal inquiry, they would have discovered that plaintiff had a policy with Kaiser-Georgetown, and that she was therefore covered for pre-existing conditions under defendants' policy. It is significant in this regard that plaintiff received no instructions before filling out her card, and it is significant also that more than

---

4. The Court need not resolve the question whether plaintiff is entitled to consequential damages for mental anguish and emotional distress resulting from the breach as reasonably foreseeable and therefore contemplated by the parties. See *Noble v. National American Life Insurance Co.*, 128 Ariz. 188, 624 P.2d 866, 867 (1981) (en banc); *Crisci v. Security Insurance Co.*, 66 Cal.2d 425, 58 Cal.Rptr. 13, 426 P.2d 173, 179 (1967); but see, *Zimmerman v. Michigan Hospital Service*, 96 Mich.App. 464, 292 N.W.2d 236 (1980). Even if these damages are not recoverable under a breach of contract theory, they would be recoverable under plaintiff's tort claim for bad faith refusal to pay insurance benefits if that claim succeeds.

5. The second element is determined by applying an objective test, *i.e.*, whether a reasonable insurer would deny or delay payment of the claim under the same facts and circumstances.

one-half of the approximately 140,000 applicants to defendants' program fail to fill in the identical blanks on the same basis as did plaintiff. Notwithstanding this fact, defendants' employees responsible for reviewing the enrollment information cards make no further inquiry into a subscriber's prior health care coverage. To the contrary, employees are instructed to assume that, if the card is left blank, no prior insurance coverage existed.

■ It has been held that an insurer is bound by the facts that would have been disclosed had it made a reasonable investigation. See, *e.g.*, *Rider v. State Farm Mutual Automobile Insurance Co.*, 514 F.2d 780, 785 (10th Cir.1975). This Court cannot conclude that, as a matter of law, defendants were not reckless or did not act in bad faith when they presumed that plaintiff had no prior health insurance merely because she, as did more than 50 percent of defendants' other subscribers, failed to provide the requested information.[6]

### III

■ Punitive damages are not recoverable in the District of Columbia in a breach of contract action even if the breach was willful, wanton, or malicious. *Sere v. Group Hospitalization, Inc.*, 443 A.2d 33, 37 (D.C.App.1982). However, if the breach merges with and assumes the character of a willful tort, such damages may be awarded. *Id.*

■ Several jurisdictions allow the recovery of punitive damages when an insurer acts wilfully, oppressively, or in bad faith in refusing to honor its obligations under an insurance contract. See, *e.g.*, *Central Armature Works v. American Motorists Insurance Co.*, 520 F.Supp. 283, 292 (D.D.C.1980) (applying District of Columbia law); *Black v. Fidelity & Guaranty Insurance Underwriters*, 582 F.2d 984, 990 (5th Cir.1978) (Mississippi law); *State Farm Mutual Automobile Insurance Co. v. Smoot*, 381 F.2d 331 (5th Cir.1967) (Georgia law); *Robertsen v. State Farm Mutual Life Insurance Co.*, 464 F.Supp. 876 (D.S.C.1979) (South Carolina law); *Phillips v. Aetna Life Insurance Co.*, 473 F.Supp. 984 (1979) (Vermont law). Because an insurer has additional obligations to its insured which subject it to more stringent standards of conduct than those normally imposed on parties to a contract, it may be found liable for punitive damages even if it was not motivated by "actual malice" or even if its conduct did not amount to fraud or misrepresentation. Rather, an insurer "may be liable for punitive damages if its actions were 'oppressive or in willful and wanton disregard of [the insured]'s rights.'" *Central Armature Works, supra*, 520 F.Supp. at 292.[7]

---

**6.** Defendants further argue that plaintiff may not recover for her alleged mental and emotional distress because she has not shown negligence with accompanying physical impact nor has she sued for intentional infliction of emotional distress. This argument is without merit. Plaintiff is suing for the tort of bad faith refusal to pay insurance benefits—not negligence—and it is therefore irrelevant whether she suffered an adverse physical impact as a result of defendants' conduct. See also, *McDowell v. Union Mutual Life Insurance Co.*, 404 F.Supp. 136, 145 (C.D.Cal.1975); *Noble v. National American Life Insurance Co., supra*, 624 P.2d at 867–68.

The Court notes additionally that in her amended complaint, plaintiff alleges that as a result of defendants' denial of benefits, she suffered physical injury as well as mental anguish and emotional distress.

Likewise without merit is defendants' assertion that plaintiff's claim is barred because she was contributorily negligent by failing to complete the enrollment form. The defense of contributory negligence is inapplicable in an intentional tort action. See W. Prosser, Torts at 426 (4th ed. 1971).

**7.** The court in *Egan v. Mutual of Omaha Insurance Co.*, 24 Cal.3d 809, 157 Cal.Rptr. 482, 598 P.2d 452 (1979), explained the policy for awarding punitive damages in such cases as follows:

[t]he relationship of insurer and insured is inherently unbalanced; the adhesive nature of insurance contracts places the insurer in a superior bargaining position. The availability of punitive damages is thus compatible with recognition of insurers' underlying public obligations and reflects an attempt to restore balance in the contractual relationship. *Id.* 157 Cal.Rptr. at 487, 598 P.2d at 457.

Defendants argue that punitive damages are inappropriate here because their conduct did not rise to the level of oppressive, willful, and wanton conduct as that of the insurer in *Central Armature Works, Inc. v. American Motorists Insurance Company,* 520 F.Supp. 283 (D.D.C.1980).[8] However, the *Central Armature Works* facts do not exhaust the types of fact situations in which punitive damages may be awarded by a jury.

■ Viewing the evidence most favorably to plaintiff and giving her the benefit of every reasonable inference therefrom, the Court concludes that defendants' refusal to investigate plaintiff's claim and its subsequent refusal to pay back any benefits under the policy for some time could be considered by a finder of facts to be sufficiently oppressive or reckless to support an award for punitive damages.

The Court concludes that defendants have not met their burden of demonstrating that there is "no genuine issue as to any material fact" with respect to plaintiff's breach of contract claim, her bad faith refusal to pay claim, and her request for compensatory and punitive damages. Accordingly, it is this 7th day of May, 1984,

ORDERED That defendants' motion for summary judgment be and it is hereby denied.

---

8. In that case the court found that the insurance company knew that its position was untenable but nevertheless refused to provide coverage and defend against claims brought against the insured. Moreover, it concealed its knowledge from the insured and instructed its attorney not to divulge any of the flawed opinion upon which it relied to deny coverage.