[No. B004240. Second Dist., Div. Five. June 10, 1985.]

MARY FRAZIER, Plaintiff and Respondent, v.
METROPOLITAN LIFE INSURANCE COMPANY,
Defendant and Appellant.

**COUNSEL**

Rogers, Joseph, O'Donnell & Quinn, Joseph W. Rogers, Jr., Susan M. Popik, Adams, Duque & Hazeltine, Bruce A. Beckman, Kimler G. Casteel, Donald J. Harman and John L. Viola for Defendant and Appellant.

Shernoff & Levine, William M. Shernoff, Pollack, Lintz, Williams, William Jerome Pollack, Hal W. Williams, Jr., and Leonard Sacks for Plaintiff and Respondent.

**OPINION**

**LAVINE, J.**\*—Defendant Metropolitan Life Insurance Company (Metropolitan) appeals from a jury verdict and judgment entered against it. The dispute arises out of a life insurance policy insuring the life of plaintiff's husband, David Frazier (David), made available to him as part of his employment benefits by the federal government. The policy contained a basic death benefit payable in the event of Frazier's death, with double indemnity in the event the insured's death resulted solely from "violent, external and accidental means." The accidental means death benefit contained a suicide exclusion. The jury awarded plaintiff damages in the amount of $12,000 for the unpaid accidental means death benefit, $150,000 for emotional distress, and $8 million in punitive damages. The court ordered the award increased to $8,168,009.72 to reflect interest on the unpaid accidental means death benefit. Punitive damages were remitted to $2 million on the ground it was excessive.

### BACKGROUND FACTS

On March 12, 1975, David, his mother, grandmother and younger brother, Curtis, boarded a charter fishing boat in Oxnard. Plaintiff was not aboard. After fishing, the boat headed back and entered the Channel Island Harbor about 6 p.m. on March 13 at a reduced speed. Shortly after the ship entered the harbor, David and Curtis Frazier came onto the starboard deck and walked forward toward the restroom. David then went overboard. There was conflicting testimony at the trial as to whether David went over-

---

\*Assigned by the Chairperson of the Judicial Council.

board voluntarily or somehow fell. A life preserver and wooden fillet board were thrown into the water but he swam to neither. Two crew members then jumped into the water and swam toward David. Crew members sought to save him, but he made no attempt to reach them and disappeared under the water.

Several days later plaintiff discovered that David had life insurance coverage, and submitted claims for the basic death benefit and the accidental means death benefit. She submitted a death certificate listing the cause of death as "salt-water drowning," and stated David had walked off the boat as it entered the harbor. In the space provided to specify whether the death was the result of an accident, suicide or homicide, the certificate contained the notation "undetermined." Metropolitan paid plaintiff the basic benefit of $12,000, less an amount assigned to the funeral parlor, and requested that she submit any death reports, police reports, or newspaper clippings which might support her claim that David died as a result of accidental means. Plaintiff provided Metropolitan with copies of the Ventura County Sheriff's missing person report and death report, the medical examiner-coroner's autopsy protocal, coroner's register and accident information, and an obituary notice.

The newspaper article indicated David had "lost his balance and fell overboard." Each of the official documents stated that David had jumped overboard and evaded rescue. The documents report that Curtis had said David told him that they were going to get him, and he told Curtis to duck as though he expected to be shot. A crew member reported he heard Curtis tell David "not to do it" and then David jumped. The report also stated that David's mother and brother had stated that David was a veteran of Vietnam and still suffered from fears of that experience, and that David had been acting "strange" all day. The report's statement that David's behavior was attributable to his Vietnam war experience was shown to be incorrect as he had never been in Vietnam.

Marie Cassiano (Cassiano), Metropolitan's claims agent, originally assigned plaintiff's claim, wrote to Custom Line Service Retail Credit Company (Retail Credit) requesting it obtain additional information, requesting "a full report of investigation concerning any motive for suicide . . . ." The Retail Credit inspector contacted David's mother, his brother, Curtis, and plaintiff. According to each, David had no motive to commit suicide. Curtis denied seeing his brother jump overboard, in contradiction to a statement credited to him in the missing person report. He said on deposition he was walking ahead of David and heard a slipping noise just before David went into the water. Plaintiff stated that David "would sometimes act strangely, sitting and staring into space for long periods of time." David's

mother claimed that David was separated from plaintiff and resided with his mother at the time of his death, but plaintiff claimed they were not estranged and that David was living with her. Cassiano reviewed the material, but having no authority at that time to pay or deny the claim herself, she referred the file to her supervisor, Charles Pfaffenbach (Pfaffenbach), with the recommendation that the claim be denied because in her opinion, David did not die as a result of accidental means.

Pfaffenbach expressed concern over the conflicts between the statements attributed to David's mother and brother immediately following David's death, and their later statements contradicting reports attributed to them. Although Pfaffenbach had power to pay the claim he did not do so, but transmitted the file to his superior Albert Danz (Danz) with the opinion, "I don't think we could sustain a denial. What do you think?" Danz asked for a further investigation, which came up with the information that: David had been absent from work five times and late five times during the first two and one-half months of 1975; again his family reiterated that David had never served in Vietnam; and that the deck rail on the boat was thirty-three and one-half inches to thirty-six inches in height with a six- to ten-inch wide rail cap and a toe rail, which configuration would have allowed David to place his feet in the toe rail and bend over the top railing with his head almost touching the side of the ship allegedly without any danger of him being able to slip. One of the crew members heard a voice say "no David, don't do it" and saw David place his hands on the rail and vault over it. Another crew member had tried to converse with David but had been met with a stare, and was told by David's mother that David had said "they are going to get me." Another crew member said David appeared to be a good swimmer, was only 50 feet from a rock jetty when he disappeared, and that he appeared to avoid rescue. A third crew member jumped into the water to rescue David but as he started to swim toward David, the latter swam away from him.

Based on this further investigation, Cassiano again referred the file to Pfaffenbach, who again reviewed the file and re-referred the file to Danz with a notation on February 19, 1976:

"Refer to your memo-dated 1-12-76

"We now have additional reports which only confirm what we already know. While there is considerable opinion that he did commit suicide I still doubt we could sustain a denial in court.

"Unless you want to deny now and try for a compromise later when she complains"

Danz disagreed with Pfaffenbach's opinion, and instructed Cassiano to deny the claim. She did so by letter dated February 24, 1976, which reads:

"Dear Mrs. Frazier

".  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  ".  .  .  .  .  .

"This letter relates to the claim which was made for the Accidental Means Death Benefit.

".  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  ".  .  .  .  .  .

"In this case, we have not been furnished with satisfactory proof that this additional amount is payable. On the contrary, the information we do have establishes that it is not payable.

"It is required by the policy that due proof be submitted that the insured sustained bodily injuries solely through violent, external and accidental means, resulting directly and independently of all other causes, in the death. It further provides that no Accidental Death Benefit will be paid if the death of the insured is caused by or the result of intentional self-destruction or intentionally self-inflicted injury while sane or insane.

"We have made a most thorough investigation into this matter. In the absence of satisfactory proof that the death of Mr. Frazier resulted from accidental means, we must conclude in the light of all the facts and circumstances that the death was the result of self-destruction.

"Since the death has not been established as one within the provisions and limitations of the policy, we regret we cannot justify payment of the Accidental Means Death Benefit."

Plaintiff did not contact Metropolitan in the period between the denial of her claim and the filing of this action. In the interim Curtis Frazier and Pfaffenbach had both died, and Danz had retired from Metropolitan.

On March 20, 1978, plaintiff filed her complaint against Metropolitan containing the following causes of action: (1) breach of contract, (2) fraud, (3) declaratory relief, (4) to recover benefits on insurance policy, (5) damages for outrageous conduct, (6) punitive damages, and (7) intentional infliction of emotional distress. In addition to contract damages plaintiff sought damages for emotional distress and punitive damages. In the certificate of assignment accompanying plaintiff's complaint, she designated the nature of her action as "tort."

PRETRIAL MOTIONS

On pretrial motions, including Metropolitan's motion to dismiss the complaint as time-barred, the court characterized plaintiff's complaint as stating claims for breach of contract, declaratory relief, breach of covenant of good faith and fair dealing, and intentional infliction of emotional distress. The court ruled that plaintiff's breach of contract claim was barred by the limitations period contained in the policy itself which barred any action brought more than two years from the last day to file a proof of claim for policy benefits (ninety days after the death); and that plaintiff's claim for intentional infliction of emotional distress was barred by the one-year limitations period of Code of Civil Procedure section 340, subdivision (3) applicable to actions for personal injuries. The court requested that plaintiff withdraw her claim for declaratory relief which she did. The trial judge ruled that plaintiff's cause of action for breach of covenant accrued on February 24, 1976 (the date the claim was denied), which was more than two years before the action was filed.

The court allowed plaintiff's claim for breach of covenant of good faith and fair dealing to go forward on the ground it was governed by the four-year limitations period of section 337, subdivision 1, applicable to actions on written contracts. Metropolitan argued against the court's ruling urging that: section 340, subdivision (3), a one-year limitation, should bar any claim for emotional distress which is purely for personal injuries; that section 340, subdivision (1), a one-year limitation, should preclude any claim for punitive damages since that section applies to actions upon a statute for a penalty or a forfeiture, in this case Civil Code section 3294; that section 339, subdivision 1, a two-year limitation applicable to actions "upon a contract, obligation or liability not founded upon an instrument of writing," should bar plaintiff's entire bad faith claim, since the essence of the action was tortious interference with a protected property right. Finally, Metropolitan urged that if the action were governed by a period of limitations applicable to contract actions, the entire action should be barred by the policy limitations period, which would be two years and ninety days after the death of Frazier.

The trial judge characterized the nature of the action as ". . . it seems to me that the Courts have created a hybrid. And that's really what I'm ruling is that it's neither a contract right or [sic] it's a tort . . . it's a tortious action on an implied covenant arising out of a contract.

". . . . . . . . . . . . . . . . . . . . . . .

"I agree with you they're getting the benefit of . . . four-year statute and punitive damages but that's the way I read the cases. . . ."

The court bifurcated the trial, the jury first to decide Metropolitan's liability for policy benefits; and later to assess damages, if appropriate, in the second phase. At the trial David's mother denied seeing her son go overboard in the manner attributed to her in the investigation statements. She testified that she saw David slip and fall overboard. She testified that David slipped because the deck was cluttered with fishing gear and bait. Curtis Frazier having died prior to the trial, his deposition was read stating that he did not see David go overboard, but heard a "slip noise," which is not in accord with a statement attributed to him in a statement to the Ventura County Sheriff's Department.

At the close of the liability phase, the jury submitted a special verdict finding that David's death resulted from accidental means; that Metropolitan had breached the covenant of good faith and fair dealing; and that Metropolitan had handled plaintiff's claim with malice (although not oppression or fraud). In the damage phase, the jury found that Metropolitan's breach of its duty of good faith and fair dealing proximately caused plaintiff to lose the policy benefit and to suffer emotional distress; as a result it awarded plaintiff damages of $12,000 for the unpaid accidental means death benefit, $150,000 for emotional distress and $8 million in punitive damages. In remitting the punitive damage award to $2 million on the ground it was excessive, the trial court stated: "In this case the defendant's conduct was not all that reprehensible. While the bad faith on the part of the defendant was clearly established by its own records, those same records . . . that's what they based their decision on . . . indicate considerable amount of facts from which it could reasonably be inferred that the decedent's death was by suicide and not caused by accidental means. It wasn't all that much of an open and shut case of death by accidental means. The jury found bad faith on the defendant's part and also that the death was by accidental means, and that stands."

### ISSUES

1. Is the action at bar one arising from contract? Yes.

2. Has plaintiff made an irrevocable election to sue on a tort rather than a contract theory? No.

3. Is the action barred by any applicable statute of limitations? No.

4. Is the action barred by the two years and ninety days limitation contained in the insurance policy? No.

5. Were the instructions erroneous and prejudicial in allegedly failing to inform the jury of the distinction between "accidental means" and "accidental death?" No.

6. Being an action arising from contract for breach of covenant of good faith and fair dealing, is plaintiff entitled to exemplary (punitive) damages under Civil Code section 3294? No.

7. As a matter of law, could Metropolitan's denial of accidental means benefits constitute bad faith? Yes.

8. Did plaintiff prove substantial damages sufficient to entitle her to damages for emotional distress? Yes.

9. Is the judgment invalid under the United States and California Constitutions? In view of the above rulings, it is unnecessary to discuss the constitutional issues.

## DISCUSSION

1. *Is the action at bar one arising from contract? Yes.*

■ The question whether an action brought against an insurance company for breach of implied covenant of good faith and fair dealing which arises out of the insurance contract sounds in tort or in contract is difficult to analyze in clear logical terms. In the words of the trial court ". . . it seems to me that the Courts have created a hybrid. . . ."

In *Comunale* v. *Traders & General Ins. Co.* (1958) 50 Cal.2d 654 [328 P.2d 198, 68 A.L.R.2d 883], when considering the nature of a covenant of good faith and fair dealing the court held that such a covenant, existing in all contracts, requires an insurer to settle a claim against its insured in an appropriate instance even though the express terms of the policy may not impose any such duty. The court stated at page 663: "[I]t is the rule that where a case sounds both in contract and tort the plaintiff will ordinarily have freedom of election between an action of tort and one of contract. . . . An exception to this rule is made in suits for personal injury caused by negligence, where the tort character of the action is considered to prevail . . . but no such exception is applied in cases, like the present one, which relate to financial damage . . . ." The complaint in *Comunale* was filed less than four years but more than two years after the cause of action arose. The court rejected the argument that an action on an implied obligation arising out of contract is not on the written instrument; consequently the four-year term of section 337, subdivision 1 of the Code of Civil Procedure is not applicable, and it held the action was not barred by any statute of limitations.

The reasoning of *Comunale* was reinforced in *Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425 [58 Cal.Rptr. 13, 426 P.2d 173]. In discussing a

$25,000 award for mental suffering caused by an insurance company's bad faith, the court said at page 432: "In *Comunale* . . . it was held that an action of the type involved here sounds in both contract and tort and that 'where a case sounds both in contract and tort the plaintiff will ordinarily have freedom of election between an action of tort and one of contract. . . .' Although this rule was applied in *Comunale* with regard to a statute of limitations, the rule is also applicable in determining liability."

*State Farm Mut. Auto. Ins. Co.* v. *Allstate Ins. Co.* (1970) 9 Cal.App.3d 508, 527 [108 Cal.Rptr. 480, 510 P.2d 1032] stands for the proposition that damages for emotional distress may be awarded in an action for breach of the covenant of good faith and fair dealing since the action is based upon a contract theory. The earlier case of *Gruenberg* v. *Aetna Ins. Co.* (1973) 9 Cal.3d 566, 573 [108 Cal.Rptr. 480, 510 P.2d 1032] stated that the action for breach of the duty of good faith and fair dealing sounds in both contract and tort.

Based upon the foregoing cases, it cannot be said that in the action for breach of the covenant of good faith and fair dealing, the tortious elements predominate. (See *McDowell* v. *Union Mutual Life Insurance Co.* (C.D.Cal. 1975) 404 F.Supp. 136, 145.) The case at bar sounds in contract as well as tort, and plaintiff is at liberty to make an election.

2. *Has plaintiff made an irrevocable election to sue on a tort rather than a contract theory? No.*

The original pleadings sound both in tort and contract. Plaintiff did check a box in the certificate of assignment that the action was in "tort." However the trial judge regarded the action as sounding in both contract and tort. Plaintiff's theory on appeal is entirely based upon a contract cause of action. Can it be said that plaintiff's previous actions constitute an irrevocable election?

The doctrine of election of remedies has been much criticized and is falling into disrepute. A person should be entitled to change his alternative remedies until one of his inconsistent rights is vindicated by satisfaction of judgment or by application of the doctrines of res judicata or estoppel. (2 Witkin, Cal. Procedure (2d ed. 1970) Actions, § 113, p. 982; *Felix* v. *Workmen's Comp. Appeals Bd.* (1974) 41 Cal.App.3d 759, 763-764 [116 Cal.Rptr. 345]; *Glendale Fed. Sav. & Loan Assn.* v. *Marina View Heights Dev. Co.* (1977) 66 Cal.App.3d 101, 138 [135 Cal.Rptr. 802].)

Defendant fails to show that plaintiff made an irrevocable election or is estopped by her conduct to rely on appeal upon a contract theory.

Plaintiff relied sufficiently upon a contract theory in the trial court so that the trial judge was of the opinion that in this hybrid action she could proceed either in contract or tort. Plaintiff's arguments countering defendant's claim of bar of statute of limitations indicate that she was proceeding on a contract theory below. Hence no irrevocable election to proceed on a tort theory was made.

3. *Is the action barred by any applicable statute of limitations? No.*

■ On the basis of *Comunale, supra, Crisci, supra, State Farm Mut. Auto. Ins. Co., supra, Gruenberg, supra,* and *McDowell, supra,* since plaintiff has the election to sue either on a contract or tort theory, if she chooses to proceed on a contract theory she is entitled to the four-year statute of limitations permitted by Code of Civil Procedure section 337, subdivision 1, when suing upon breach of the covenant of good faith and fair dealing and for damages for emotional distress based upon such breach.

Metropolitan argues that *Crisci, supra,* proceeds upon a tort theory of action in allowing recovery for damages arising from emotional distress. We do not read *Crisci* in this limited fashion, in view of the language on page 434: "Recovery of damages for mental suffering in the instant case does not mean that in every case of breach of contract the injured party may recover such damages. Here the breach also constitutes a tort. Moreover, plaintiff did not seek by the contract involved here to obtain a commercial advantage but to protect herself against the risks of accidental losses, including the mental distress which might follow from the losses. Among the considerations in purchasing liability insurance, as insurers are well aware, is the peace of mind and security it will provide in the event of an accidental loss, and recovery of damages for mental suffering has been permitted for *breach of contracts* which directly concern the comfort, happiness or personal esteem of one of the parties." (Italics added.)

*Mustachio* v. *Ohio Farmers Ins. Co.* (1975) 44 Cal.App.3d 358, 363-364 [118 Cal.Rptr. 581] although involving an award of attorneys' fees rather than damages for emotional distress, supports the same proposition as *Crisci.*

In *McDowell, supra,* the court stated at page 145: "Since the bad faith cause of action sounds in both contract and tort, and since insurance contract damages can appropriately be imposed in compensation for mental distress, this court cannot say that the tort character of the action predominates. The defendants' § 340(3) argument is rejected. Plaintiffs can properly found their bad faith contract claim on § 337(1) and its four year statute of limitations provision."

Since Metropolitan has failed to show that Mrs. Frazier irrevocably elected to proceed on a tort theory, she is entitled to proceed upon a contract theory entitling her to a four-year statute of limitations. Hence her action is not time-barred.

4. *Is the action barred by the two years and ninety days limitation contained in the insurance policy? No.*

■ Metropolitan urges that if Mrs. Frazier is permitted to proceed upon a contractual theory, she is then bound by the time limitations contained in the insurance policy itself, provided such time limitations are not unreasonable. The policy provides: "No action at law or in equity shall be brought to recover on this Policy . . . unless brought within two years from the expiration of the time within which proof of claim is required by the Policy." This two-year period is reasonable. David died on March 13, 1975. Proof of claim had to be filed no later than June 11, 1975. The policy language would have required any complaint to be filed no later than June 11, 1977, however the complaint actually was filed on March 20, 1978.

The trial judge held that plaintiff's breach of contract claim was barred by the time limitations of the contract, but that since her cause of action for breach of covenant of good faith and fair dealing did not accrue until the claim on the double indemnity portion of the contract was denied, namely February 24, 1976, the action was timely filed under the policy for breach of that covenant.

Suppose Metropolitan had written to Mrs. Frazier on February 24, 1976, an equivocal letter stating that they were still in doubt whether her husband's death was caused by suicide but that they would make further efforts to run down evidence. Suppose Metropolitan then should make further efforts and uncover no new significant evidence, yet wait until February 24, 1977, or February 24, 1978, before writing to Mrs. Frazier the same letter actually sent on that date—could Metropolitan still urge that an action would still have to be filed no later than June 11, 1977?

As the above example demonstrates, and as found by the trial judge, Mrs. Frazier's action does not commence until Metropolitan denies her claim on the ground of suicide. Prior to such time Mrs. Frazier has a right (so far as the policy limitation is concerned) to sit back and wait until denial of claim before urging bad faith. Because it is not until Metropolitan actually denies the claim on the ground of suicide that Mrs. Frazier can actually ascertain whether or not Metropolitan has acted in bad faith. So long as Metropolitan continues to tell Mrs. Frazier they are trying to uncover new evidence, they

have not committed an ultimate act of bad faith, and Mrs. Frazier has a right to rely upon their assurances.

*Murphy* v. *Allstate Ins. Co.* (1978) 83 Cal.App.3d 38 [147 Cal.Rptr. 565] supplies an answer to Metropolitan's argument. In *Murphy* the trial court granted a summary judgment on the basis of statute of limitations since Insurance Code sections 2070 and 2071 required an action on a fire insurance policy to be brought within 12 months after inception of the loss. The appellate court reversed, holding that since the causes of action complained of the wrongful conduct of the insurer with respect to repair and restoration of the property damages by the fire and also delays in payment, such claims were not for losses covered by the insurance policy and hence were not barred by the 12-month statute of limitations. The court said at page 48: ". . . while it is true that a bad faith claim is predicated upon a breach of the duty of good faith and fair dealing that arises out of the contractual relationship between the parties . . . and while the implied covenant of good faith and fair dealing is 'immanent [*sic*] in the contract' . . . the duty of good faith and fair dealing is not strictly a contractual obligation. It is an obligation imposed by law which governs a party to a contract in discharging its contractual responsibilities. . . ." The court also stated at page 49: "Moreover, there is a significant difference between 'arising out of the contractual relationship' and 'on the policy.' In a broad sense, all of plaintiffs' alleged causes of action may be said to 'arise out of the contractual relationship' but as we have seen, they are not actions 'on the policy.' . . ."

Hence the policy time limitation, even if reasonable, does not bar this action based upon the hybrid contractual nature of the implied covenant of good faith and fair dealing.

5. *Were the instructions erroneous and prejudicial in allegedly failing to inform the jury of the distinction between "accidental means" and "accidental death?" No.*

Metropolitan states that the jury was misled by an instruction which advised the jury that plaintiff had the burden of proving that David's death "was caused by accidental means, as that term has been defined to you in these jury instructions, rather than by suicide." "Accidental means" was defined in another jury instruction. Respondent urges that both of these instructions were offered by Metropolitan; however, Metropolitan contends that the instruction was given over its objection, and that the words "and not by suicide" should have been used in place of the words contained in the instruction as given, namely "rather than by suicide."

Metropolitan's position is that there are three alternatives rather than two; that the three alternatives are (1) death by suicide, (2) death by "accidental

means," and (3) that David's death was accidental, i.e., unexpected. Assuming arguendo that there are three rather than two alternatives, in its letter of February 24, 1976, appellant stated: "In the absence of satisfactory proof that the death of Mr. Frazier resulted from accidental means, *we must conclude . . . that the death was the result of self-destruction.*" (Italics added.) Since Metropolitan took the position in its rejection letter that there were only two alternatives, and has not presented anything in the record to show that the case was argued to the jury or the evidence at trial revealed any such third alternative, the alleged error was harmless, if indeed it can be termed erroneous.

The difference between the words "rather than by suicide" and "and not by suicide" is indeed subtle. Metropolitan has not demonstrated how the jury would have caught any fine distinction in these phrases. Since Metropolitan proffered the instruction which was changed but slightly by the trial judge, it was the obligation of Metropolitan to submit such clear instructions that neither the trial judge nor the jury could have failed to appreciate easily any possible distinction between the two phrases.

The case of *Hargreaves* v. *Metropolitan Life Ins. Co.* (1980) 104 Cal.App.3d 701 [163 Cal.Rptr. 857] and *Cox* v. *Prudential Ins. Co.* (1959) 172 Cal.App.2d 629 support the instruction given by the trial court, which was not erroneous. See *Searle* v. *Allstate Ins. Co.* (1985) 38 Cal.3d 425 [212 Cal.Rptr. 466, 696 P.2d 1308] placing the burden of proving that insured's act of self-destruction was intentional upon the insurance carrier.

6. *Being an action arising from contract for breach of covenant of good faith and fair dealing, is plaintiff entitled to exemplary (punitive) damages under Civil Code section 3294? No.*

■ We have previously concluded that plaintiff elects to proceed on a contract theory and hence is not time-barred by any statute or the terms of the policy, although plaintiff is entitled to seek damages for emotional distress despite an election to proceed on a contract theory. Taking the position that in this hybrid contract-tort type of action plaintiff was not time-barred by any statute of limitations, the trial court also allowed plaintiff to seek punitive damages in view of the tortious element of the covenant of good faith and fair dealing.

Can plaintiff avoid the time-bar of the one and two-year tort statutes of limitation by proceeding under a contract theory with a four-year time limitation, yet also recover punitive damages on a tort theory? We think not.

The only case, based upon California law, dealing squarely with this question is *McDowell* v. *Union Mutual Life Insurance Co., supra.*[1] The action, based on the claim that the insurers had deprived the insureds wrongfully of benefits due under the insurance policy, was removed to the federal district court because of diversity of citizenship. Trial Judge Warren Ferguson held upon pretrial motions that under California law any claim for extracontractual damages was time-barred; that the contract claim for bad faith refusal to pay was governed by the four-year statute and was not time-barred if election were made; and, among other things, held that the tort claim for punitive damages for bad faith refusal to pay was barred by a two-year statute of limitations. Upon reviewing the California cases, the trial court held that if plaintiffs elects to proceed on a contract theory their claim was not time-barred and they can proceed to trial; however, if they did so they could not seek punitive damages which must arise solely upon a tort claim of action. The court said at page 145: "Defendants maintain that an action based on contract cannot give rise to a claim for punitive damages. Plaintiffs respond that the courts in California have found authority to award punitive damages in such actions. But none of the cases cited by the plaintiffs support this position. In *Crisci* and *Gruenberg,* for example, the court found that the plaintiffs had elected to sue in tort, and the court thus upheld awards for punitive damages even though the tort involved was a tortious breach of contract. . . . The unqualified language of *Crogan* v. *Metz* (1956) 47 Cal.2d 398, 408 . . . applies here: '[Punitive damages] may not be granted in an action based on a breach of contract even though the defendant's breach was wilful or fraudulent.' Indeed this result follows from the language of Civil Code § 3294, 'In an action for the breach of an obligation *not arising from contract,* where the defendant has been guilty of oppression, fraud, or malice, express or implied, the plaintiff . . . may recover damages for the sake of example and by way of punishing the defendant.' (Italics added.)

"Alternatively the plaintiffs argue that their bad faith cause of action can be upheld on a tort theory. Assuming that plaintiffs' cause of action were read to arise in tort, punitive damages are appropriately pleaded if, but only if, the complaint can survive an attach based on the statute of limitations."

Although *McDowell* is only a federal district court case which is not binding but merely persuasive as to applicable California law, we adopt its reasoning in view of the categorical statutory language of Civil Code section 3294. We fail to find any California case allowing punitive damages when the complaint is based *only* on a contract theory of action. When the action

---

[1]*McDowell* is cited favorably on a related point in *Richardson* v. *Allstate Ins. Co.* (1981) 117 Cal.App.3d 8, 13 [172 Cal.Rptr. 423].

proceeds under alternate tort theories in addition to a contract action, then punitive damages may be awarded under the alternative tort theory. (*Wetherbee* v. *United Insurance Co.* (1968) 265 Cal.App.2d 921 [71 Cal.Rptr. 764]; *Walton* v. *Anderson* (1970) 6 Cal.App.3d 1003 [86 Cal.Rptr. 345]; *Fletcher* v. *Western National Life Ins. Co.* (1970) 10 Cal.App.3d 376 [89 Cal.Rptr. 78, 47 A.L.R.3d 286]; *Miller* v. *National American Life Ins. Co.* (1976) 54 Cal.App.3d 331 [126 Cal.Rptr. 731].) But if the tort cause of action is time-barred, then unlike *Wetherbee, Walton, Fletcher,* and *Miller,* but like *McDowell,* plaintiff must proceed solely on her contract theory; and she may not also proceed on the time-barred tort theory to obtain punitive damages (see *Fletcher, supra,* at p. 400).

It may be argued that if under the basis of *Crisci, supra,* plaintiff is allowed to recover damages for emotional distress, why should she be barred from recovering punitive damages, since both these types of damages are tortious in nature? Here, pure logic must give way to the strict statutory prohibition of section 3294 and case authority interpreting the statute, as punitive damages in California are based upon this statute alone; and it is the statutory language which controls. Since *Murphy* v. *Allstate Ins. Co., supra,* 83 Cal.App.3d 38, made the distinction that the breach of covenant action *arises out of the policy* and is not *on the policy,* we hold that the two-year and ninety-day time limitation in the insurance policy do not bar the action. Yet the very words of section 3294 permit punitive damages only for breach of an obligation *not arising from contract.* The exact statutory words bar plaintiff from seeking damages on a contract theory since her tort claim was time-barred.

*7. As a matter of law, could Metropolitan's denial of accidental means benefits constitute bad faith? Yes.*

█    There is ample evidence in the record to support the jury's finding of bad faith. The nature of the investigation, the "try for a compromise" if the widow complains, and the categorical assertion that the evidence cannot support a cause of death other than suicide constitute substantial evidence of bad faith. We concur with the trial court's finding, when denying a motion for new trial, that the bad faith on the part of defendant was clearly established by its own records.

*8. Did plaintiff prove substantial damages sufficient to entitle her to damages for emotional distress? Yes.*

█    Metropolitan contends that plaintiff cannot recover damages for emotional distress without establishing that the withholding of the double indemnity portion caused plaintiff substantial damages apart from emotional dis-

tress and loss of contract benefits itself. Appellant cites *Crisci* v. *Security Ins. Co.*, *supra*, *Gruenberg* v. *Aetna Ins. Co.*, *supra*, *Blake* v. *Aetna Life Ins. Co.* (1979) 99 Cal.App.3d 901, 925 [160 Cal.Rptr. 528] as supporting such proposition of law. We do not read these cases as supporting Metropolitan's position.

If appellant's reasoning were carried into practice the following practical results may follow. An insured may easily show additional damages from economic deprivation and hence damages for emotional distress if denied double indemnity on a $1.2 million policy, could probably show such damage for economic deprivation under a $120,000 policy, but may have difficulty in showing actual economic deprivation under a $12,000 or less policy. The consequence could be that an insurance company could with impunity deny recovery for double indemnity for policies $12,000 and under. If challenged successfully in court, the insurance company at most would be liable only for the face amount of the policy. If the challenge were never made or if it were unsuccessful, the insurance company still would be ahead the face amount of the policy. Since surely the amount of premium is based upon the actuarial statistics revealing probability of accidental deaths as compared with deaths by suicide, it would not be the policy of the Legislature or the California Insurance Commissioner to allow such a windfall as may occur if appellant's logic were carried to its conclusion.

There is sufficient evidence in the record to support the verdict for damages for emotional distress. Metropolitan failed to submit any jury instruction containing the legal proposition it now advances. Moreover, one of Metropolitan's requested jury instructions would permit the jury to award damages for emotional distress caused by the wrongful conduct of defendant. Appellant has not shown any authority for an obligation on the trial court to give the instruction *sua sponte* in the form now argued on appeal by appellant, even if arguendo there is any merit in this contention.

9. *Is the judgment invalid under the United States and California Constitutions? In view of the above rulings, it is unnecessary to discuss the constitutional issues.*

■ Metropolitan and the amicus curiae challenge the judgment upon constitutional grounds arising out of the alleged violations of the California and United States Constitutions resulting from: (1) failure of California courts to follow controlling United States Supreme Court decisions requiring that Metropolitan be given criminal protections in the trial court re punitive damages; (2) the fundamental unfairness of California law and procedures in bad faith claims in insurance contract cases; (3) punishment of status resulting from use of a wealth standard in determining the amount of

punitive damages; (4) the invidious discrimination in subjecting Metropolitan to open-ended punitive damages while legislatively limited the amount of such damages in at least 16 other categories of cases, without rational basis.

Although Metropolitan raised sufficiently the constitutional issues in the trial court, in view of the holding above denying plaintiff judgment for punitive damages, it is unnecessary to consider the constitutional issues presented re punitive damages.

The judgment of the trial court is corrected as set forth in issue No. 6 by striking from the award the sum of $2 million for exemplary (punitive) damages, and as modified herein the judgment is affirmed.

Ashby, Acting P. J., and Hastings, J., concurred.

A petition for a rehearing was denied July 9, 1985, and respondent's petition for review by the Supreme Court was denied September 13, 1985. Bird, C. J., and Broussard, J., were of the opinion that the petition should be granted.