[No. H015496. Sixth Dist. May 22, 1998.]

HELMUT ANDRES et al., Plaintiffs and Appellants, v.
YOUNG MEN'S CHRISTIAN ASSOCIATION, Defendant and
Respondent.

## COUNSEL

Bush, Strout & Kornfeld, David Strout and James L. Day for Plaintiffs and Appellants.

Ropers, Majeski, Kohn & Bentley, Susan H. Handelman and Terry Anastassiou for Defendant and Respondent.

## OPINION

**PREMO, Acting P. J.**—Stephan Andres accidentally drowned in a spa pool located in the men's locker room of the Young Men's Christian Association (hereafter, YMCA). Stephan's parents, plaintiffs Helmut and Edith Andres, and his sister and personal representative, plaintiff Susan Andres, sued defendant YMCA for wrongful death. The jury found defendant negligent but that the negligence did not cause Stephan's death. On appeal from the judgment, plaintiffs principally contend that the trial court erred by refusing their proffered jury instructions to the effect that defendant's failure to provide lifeguard service or a supervisor in the locker room constituted negligence per se. We disagree and affirm the judgment.

### BACKGROUND

In 1992, Stephan was a 30-year-old electrical engineer with a medical history of "complex partial seizures." He suffered his first seizure in March 1989, and a second one in June 1989. Doctors prescribed carbamazipine. He experienced a third seizure in December 1990, after stopping his medication due to an illness.

Stephan was a member of the YMCA. The YMCA facility which Stephan frequented had separate spa pools in the men's and women's locker rooms. The men's spa pool was in an enclosed space in the shower room. A warning sign concerning the spa pool was placed both outside and inside the spa pool room. The signs warned those with health conditions requiring medical care to consult with a physician before using the spa pool; prohibited use of the spa pool by those under the influence of alcohol, narcotics, drugs, or medicines; and, prohibited use immediately following vigorous exercise. The warning signs, however, failed to include a "Do not use alone" admonition required by the California Building Code. (See Cal. Code Regs., tit. 24, § 3119B.5.)

Stephan visited his YMCA facility on September 15, 1992, and used the Stairmaster. Later, another member found Stephan unconscious and face-down in the men's spa pool. Resuscitative efforts failed. The medical examiner found that Stephan had accidentally drowned and that the finding was consistent with Stephan having suffered a seizure before going under water. Stephan's carbamazipine blood level was below his therapeutic level which increased his risk of having a seizure.

Plaintiffs argued that defendant was negligent per se in that the spa pool warning signs failed to comply with the law.[1] They also argued that defendant was negligent because no lifeguard or supervisor watched spa pool users. The trial court, however, refused to instruct the jury that defendant was negligent per se in that no lifeguard or supervisor watched spa pool users.[2]

---

[1]Defendant stipulated that the spa pool warning signs failed to comply with the law. The trial court instructed the jury as follows: "A statute or regulation of the State of California provides that the owner or operator of a pool spa shall post a warning sign for the pool with clearly legible letters in a prominent place near the entrance of the spa pool which shall contain the following language: [¶] Caution one. Elderly persons, pregnant women, infants and those with health conditions requiring medical care should consult with a physician before entering a spa. [¶] Two. Unsupervised use by children under the age of fourteen is prohibited. [¶] Three. Hot water immersion while under the influence of alcohol, narcotics, drugs or medicines may lead to serious consequences and is not recommended. [¶] Four. Do not use alone. [¶] Five. Long exposure may result in nausea, dizziness or fainting. [¶] The defendant has stipulated that the caution signs in existence on September the 15th, 1992, violated the statute or regulation just read to you. [¶] If you find that such violation was a cause of injury to Stephan Andres, you will find that such violation was negligence, unless the defendant proves by a preponderance of the evidence that the defendant did what might reasonable be expected of a person of ordinary prudence acting under similar circumstances who desired to comply with the law. [¶] In order to sustain such burden of proof, the defendant must prove by a preponderance of the evidence that the defendant was faced with circumstances which prevented compliance or justified noncompliance with the particular statute or regulation just read to you."

[2]Plaintiffs' proffered lifeguard instruction (No. 32) states as follows: "A statute or regulation of the state of California provides that: [¶] Lifeguard service shall be provided for public spa pools. [¶] Lifeguard service means the attendance at the public spa during periods of use, of one or more lifeguards who possess, as minimal qualifications, current Red Cross advanced lifesaving certificates or Y.M.C.A. senior life saving certificates, or have equivalent qualifications and who are trained to administer first aid, including, but not limited to, cardiopulmonary resuscitation, and who have not [sic] duties to perform other than to supervise the safety of participants. [¶] Where lifeguard service is provided, the number of lifeguards shall be adequate to maintain continuous surveillance over the bathers. [¶] The men's spa pool at the YMCA of the Mid-Peninsula is a public spa pool. [¶] The defendant violated the statute or regulation just read to you. If you find that such violation was a cause of injury to another, you will find that such violation was negligence unless defendant proves by a preponderance of the evidence that it did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law. In order to sustain such burden of proof, defendant must prove by a preponderance of the evidence that

## DISCUSSION

Plaintiffs contend that former Health and Safety Code section 24101.4, subdivision (a) (now Health & Saf. Code, § 116045),[3] required defendant to provide for its spa pool a lifeguard or a sign warning that no lifeguard was on duty.

Health and Safety Code section 116045, subdivision (a), states: "Lifeguard service shall be provided for any public swimming pool that is of wholly artificial construction and for the use of which a direct fee is charged. For all other public swimming pools, lifeguard service shall be provided or signs shall be erected clearly indicating that such service is not provided."[4]

The Health and Safety Code defines "public swimming pool" as follows: " 'Public swimming pool,' as used in this article, means any public swimming pool, bathhouse, public swimming and bathing place and all related appurtenances." (Health & Saf. Code, § 116025 [formerly § 24100; see Stats. 1995, ch. 415, § 6].)

The parties have not cited nor have we found any case construing Health and Safety Code section 116025. But we agree with an opinion that interpreted the term "swimming pool" for purposes of Business and Professions Code statutes that regulated swimming pool construction contracts.

In *California Pools, Inc.* v. *Pazargad* (1982) 131 Cal.App.3d 601 [182 Cal.Rptr. 568], the court rejected an argument that "spas" were "swimming pools." It explained: "The term 'swimming pool' is thoroughly unambiguous. Neither when it first enacted the statute in 1969, nor when it transferred the legislation to the Business and Professions Code in 1979, did the Legislature define the term swimming pool, or assign to it a meaning other than its ordinary meaning, or give any indication that it intended a broader meaning to apply. It is not the role of the court to expand the term's obvious and ordinary meaning. No representation is made that anyone could swim in appellants' spa. [¶] The decision as to whether or not to include spas within the regulatory scheme was properly the Legislature's." (*Id.* at p. 605.)

---

it was faced with circumstances which prevented compliance or justified noncompliance with the statute or regulations."

[3]Health and Safety Code section 24101.4 was renumbered by Statutes 1995, chapter 415, section 6. For clarity, we will use the current number.

[4]The parties agreed that defendant did not charge a direct fee for use of its spa pool. Thus, plaintiffs' evidence showed that defendant neither provided a lifeguard nor posted a "No Lifeguard On Duty" warning. Instruction No. 32 conformed to *Haft* v. *Lone Palm Hotel* (1970) 3 Cal.3d 756, 769 [91 Cal.Rptr. 745, 478 P.2d 465] ("the liability of a pool owner, who has neither provided a lifeguard nor erected a warning sign, [is] measured with respect to his wrongful omission to provide lifeguard services").

Plaintiffs rely on an opinion of the Attorney General rendered in answering whether mineral baths and like facilities are "swimming pools" within the meaning of Health and Safety Code section 116025. The opinion states: "We find no cases of record which concern the definition of 'bathhouse, . . . bathing places [*sic*], and all related appurtenances.' Webster's 3rd International Dictionary (unabridged), at page 185, lists the following definitions: [¶] *bathhouse.* 'a house or building equipped and used for bathing. . . .' [¶] *bath.* 'a washing or soaking of all or part of the body (as in water, steam, mud or sunshine) . . . .' [¶] *bathe.* 'to wash in water or another liquid, esp. for the purpose of cleanliness, refreshment, or health. . . .' [¶] We, therefore, believe that the expressions 'bathhouse' and 'bathing place' are broad enough to include mineral pools which are used primarily or exclusively for therapeutic and health reasons." (52 Ops.Cal.Atty.Gen. 63, 64 (1969).)

■ First, opinions of the Attorney General are not binding, though they are entitled to considerable weight. (*State of Cal.* ex rel. *State Lands Com.* v. *Superior Court* (1995) 11 Cal.4th 50, 71 [44 Cal.Rptr.2d 399, 900 P.2d 648].) More important, however, is that the opinion is not persuasive because it was given in a different context than we face.

The underlying question before the Attorney General was whether mineral baths and the like were subject to regulation for sanitation. The Attorney General relied, in part, on *Askew* v. *Parker* (1957) 151 Cal.App.2d 759, 762 [312 P.2d 342] ("Turning to the statute in question, it is readily apparent that we are here concerned with a public health statute enacted for the purpose of protecting the citizens of California from the dangers which may easily lurk in contaminated waters or improperly equipped and maintained swimming pools") and concluded that the evils sought to be remedied by the statute equally existed in mineral baths. (52 Ops.Cal.Atty.Gen., *supra*, at p. 64.)

■ Here, the underlying question is whether the statute requires a lifeguard to be stationed at a seven-foot, ten-inch by seven-foot, four-inch spa pool that is three feet six inches deep and located in the shower facility of a locker room. The obvious public safety purposes for requiring lifeguards at public swimming pools simply do not apply to such a facility—shower room spa pools accommodate a limited number of people and do not pose drowning dangers comparable to a deep-water pool. To construe the statute to require lifeguards for such facilities would compel spa pool owners to hire professional lifeguards to oversee limited-use and relatively safe facilities. This is an absurd consequence. (*People* v. *Pieters* (1991) 52 Cal.3d 894, 898-899 [276 Cal.Rptr. 918, 802 P.2d 420] [statute should not be given a literal meaning if doing so would result in absurd consequences the Legislature did not intend].)

Plaintiffs also rely on the Department of Health Services public swimming pool regulations. (Cal. Code Regs., tit. 22, § 65501 et seq.)[5] This reliance is erroneous.

Section 65501, subdivision (a), defines "swimming pool" or "pool" as "an artificial basin, chamber or tank used, or intended to be used, for public swimming, diving, or recreative bathing, but does not include baths where the main purpose is the cleaning of the body, nor individual therapeutic tubs." Section 65501, subdivision (f), defines "spa pool" as "a pool, not used under medical supervision, that contains water of elevated temperature, and incorporates a water jet system, an aeration system or a combination of the two systems." And section 65503, subdivision (a), states that the public swimming pool regulations "apply to all pools."

We cannot deny that the regulations, in the abstract, define "swimming pool" in a manner that includes "spas" or spa pools. But statutes should be read in context and not in isolation. (*Lungren* v. *Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) In context, the definition of swimming pool for purposes of lifeguard services is not as all-inclusive as the definition given by the regulations.

The public swimming pool regulations are divided into three articles. The first article deals with the definitions and scope of the regulations, as described above. The second article deals with swimming pool construction. And the third article deals with maintenance and operation, principally sanitation and hygiene. The only reference to lifeguard services is in section 65539, located in article 3. But section 65539 does not purport to tie lifeguard services to the expanded definition of "swimming pool" given by section 65501. Subdivision (a) of section 65539 simply states that "Lifeguard services shall be provided in accordance with Sections 24100.1 and 24101.4 of the Health and Safety Code." Thus, the regulations do not expand the statutory definition of public swimming pool for purposes of lifeguard services.

We therefore conclude that the trial court correctly refused plaintiffs' negligence per se instruction regarding defendant's failure to provide lifeguard services.

---

[5]Further unspecified section references are to California Code of Regulations, title 22.

■ Plaintiffs also contend that the trial court erroneously refused their request to give a negligence per se instruction pertaining to defendant's failure to have a person supervising spa pool users.[6]

Without analysis, plaintiffs rely on the following regulation: "Every pool shall be under the supervision of a person who is fully capable of, and shall assume responsibility for, compliance with all requirements relating to pool operation, maintenance and safety of bathers." (§ 65521, subd. (a).) Plaintiffs' conclusion is erroneous.

Section 65521 is found within the article is entitled "Maintenance and Operation." With the exception of section 65539, which addresses lifeguard services, the entire article pertains to supervision of pools in the context of facility sanitation and hygiene, not user safety. Indeed, plaintiffs' construction makes no sense: If a section 65521 supervisor is required to monitor user safety, the supervisor is essentially charged with lifeguard responsibilities without having to undergo lifeguard training.

Negligence per se only applies if the person suffering the death or injury was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted. (Evid. Code, § 669, subd. (a)(4).) Stephan, as a victim of drowning rather than unhealthful facilities, was not in the class of persons for whose protection section 65521 was adopted. The trial court therefore properly refused plaintiffs' negligence per se instruction predicated on section 65521.

Plaintiffs also advance three claims of evidentiary error.

One, that the trial court erred by denying their motion to strike testimony that a "No Lifeguard On Duty" warning sign was not required in the locker room. Given our holding that Health and Safety Code section 116045 does not apply to this case, it follows that the ruling was correct.

---

[6]Plaintiffs' proffered supervisor instruction (No. 31) states as follows: "A statute or regulation of the state of California provides that: [¶] Every spa pool shall be under the supervision of a person who is fully capable of, and shall assume responsibility for, compliance with all requirements relating to pool operation, maintenance and safety of bathers. No spa pool shall be used or available for use unless these requirements are complied with. [¶] If you find that defendant violated the statute or regulation just read to you and that such violation was a cause of injury to Stephan Andres, you will find that such violation was negligence unless defendant proves by a preponderance of the evidence that the party did what might reasonably be expected of a person of ordinary prudence, acting under similar circumstances, who desired to comply with the law. In order to sustain such burden of proof, defendant must prove by a preponderance of the evidence that defendant was faced with circumstances which prevented compliance or justified noncompliance with the statute or regulations."

Two, that the trial court erred by sustaining defendant's objection to evidence intended to show that the Santa Clara County Health Department interpreted the California Code of Regulations to require a lifeguard or a "No Lifeguard On Duty" sign in defendant's locker room. Again, it follows from our holding that the trial court's ruling was correct.

And three, that the trial court erred by excluding from evidence a county inspection report (made two years after Stephan's death) citing defendant for failing to display a "No Lifeguard On Duty" sign in the locker room. This evidence is patently irrelevant. (Evid. Code, § 210 [evidence must have some tendency in reason to prove or disprove a disputed fact that is of consequence to the determination of the action].) It is undisputed that defendant did not have a warning sign at the time in question. And it is of no consequence that defendant was cited since it follows from our holding that the citation was in error.

## DISPOSITION

The judgment is affirmed.

Elia, J., and Wunderlich, J., concurred.

On June 15, 1998, the opinion was modified to read as printed above.