[No. B107681. Second Dist., Div. Four. Mar. 22, 1999.]

CBS BROADCASTING INC., Plaintiff and Appellant, v.
FIREMAN'S FUND INSURANCE COMPANY, Defendant and
Respondent.

## COUNSEL

Frederick F. Mumm and Jonathan D. Avila for Plaintiff and Appellant.

Berger, Kahn, Shafton, Moss, Figler, Simon & Gladstone, Bruce M. Warren and Leon J. Gladstone for Defendant and Respondent.

## OPINION

**EPSTEIN, Acting P. J.**—The issue in this appeal is the applicable statute of limitations for an action on an insurance policy issued by Fireman's Fund Insurance Company (Fireman's) to indemnify CBS Broadcasting Inc. (CBS).

CBS claims that it incurred extra production costs on a television series due to the inability of one of its stars to work because of illness. The outcome on appeal depends on whether the policy at issue is one for disability insurance. If it is, the three-year limitations period of Insurance Code section 10350.11 controls. (All statutory references are to the Insurance Code unless otherwise indicated.) If it is not, the one-year limitations provision of the policy controls, and the trial court properly awarded summary judgment to Fireman's on the basis of this defense. We conclude that the policy is not a disability policy. We find no basis for reversal in CBS's other arguments, and affirm the ensuing judgment.

### FACTUAL AND PROCEDURAL SUMMARY

Fireman's issued a policy of insurance to CBS. The coverage period was March 19, 1993, to March 19, 1996. The policy covered certain television series produced by CBS, including *Dr. Quinn, Medicine Woman (Dr. Quinn)*. Section I of the policy provided $10 million in cast coverage. Paragraph I of that section provided: "We agree to pay to you such loss . . . as you shall directly and solely sustain by reason of any covered person in connection with an insured production, being necessarily prevented by their death, injury or sickness, occurring during the term of the insurance afforded by this Section, from commencing or continuing or completing their respective duties or performance(s) in an insured production."

It is undisputed that the policy contained a limitation of actions provision: "No action against us may be brought unless you have complied with all of the provisions of this policy and the action is started within one (1) year after the occurrence causing the loss or damage." "Loss" as used in the cast coverage portion of the policy "shall mean any extra expenditure (as defined in Insurable Production Cost) you incur in completing principal photography of an insured production over and above the expenditure which, but for the happening of any one or more of the occurrences specified in Paragraph I would have been incurred in completing said principal photography."

On November 17, 1993, Robert Gros, senior vice-president, CBS Entertainment Productions, wrote the Kalvin-Miller insurance firm to inform Fireman's of a claim against the policy. The claim arose out of an interruption in production of *Dr. Quinn* resulting from the illness and consequent absence of Jane Seymour, who played the title character, commencing on or about October 6, 1993. The letter explained that Ms. Seymour received word on October 6 that her sister was seriously ill in London, and she then flew to London to be with her sister. This occurred during the production schedule for the second season of *Dr. Quinn*.

On January 5, 1994, Denise Dimin, Fireman's assistant claims manager, entertainment, responded to Mr. Gros's letter. In her letter, Ms. Dimin stated that the November 17, 1993, letter from CBS was the first notice received by Fireman's of the claim and suggested that Fireman's might have been prejudiced by the delay in making the claim. She referred to portions of the policy requiring immediate notification of any claim. Ms. Dimin also stated that it appeared that the loss was not covered because Ms. Seymour had not had a timely precoverage physical examination as required by the policy. Ms. Dimin also wrote: "[T]he unavailability of a covered person, even in those circumstances in which all policy conditions have been complied with, should not be construed as the unavailability of a member of the covered person's family." Based on these factors, Ms. Dimin concluded that there was no coverage for the loss.

Apparently there were discussions regarding the claim among CBS personnel, representatives of the Kalvin-Miller Insurance Agency, and others. On July 18, 1995, Ms. Dimin wrote to Dennis D'Oca of CBS in New York in response to his request that the denial of coverage be reviewed. Ms. Dimin said that Fireman's considered the claim to be closed. Ms. Dimin explained that she had retrieved the file and reviewed it, and concluded that coverage was properly declined.

On August 11, 1995, Robert Emigh of CBS responded to Ms. Dimin's January 5, 1994, letter. He asserted that the claim was for Ms. Seymour's illness, rather than for her sister's. He also said CBS gave proper notice, and attached a copy of a letter dated October 12, 1993, in which CBS notified the Kalvin-Miller agency of the claim. He also responded to the other reasons given by Ms. Dimin for denying coverage.

Ms. Dimin wrote to Mr. Emigh on October 2, 1995, saying that she had again reviewed the claim, and had a coverage question concerning the timing of production in relation to the medical examinations given Ms. Seymour because the policy required an examination of covered persons not more than 30 days prior to the start date of the covered person's work. To resolve this question, Ms. Dimin asked for complete production schedules for all four seasons of all episodes produced for *Dr. Quinn*.

On November 6, 1995, Ms. Dimin wrote to Mr. Emigh again, saying that she had received no response to her letter of October 2, and saying that she assumed he was still attempting to respond to her requests.

Mr. Emigh met with his supervisor, Jerry Brandt, and assisted him in gathering materials to respond to Ms. Dimin's request. On November 14,

1995, Mr. Brandt wrote to Ms. Dimin, providing a sample of the production schedule information available and asking if this would meet her needs. Mr. Brandt explained that if this material was satisfactory, he would provide it for the entire production life of *Dr. Quinn.* Following a telephone conversation between Mr. Brandt and Ms. Dimin, Mr. Brandt wrote to Ms. Dimin again on December 7, 1995, sending her the shooting schedules for *Dr. Quinn,* showing the actual dates of production of each of the 40 episodes of *Dr. Quinn* produced in the first and second seasons. On January 4, 1996, Ms. Dimin sent Mr. Brandt a facsimile transmission requesting additional information about the production schedule for the third season of *Dr. Quinn.*

On January 5, 1996, CBS sued for declaratory relief, breach of contract and breach of the covenant of good faith and fair dealing. Fireman's answered the complaint. One of its affirmative defenses was that CBS had failed to comply with the one-year limitation of actions provision in the policy.

Fireman's moved for summary judgment, or in the alternative, summary adjudication based on CBS's failure to comply with the contractual limitations of action period. It argued that the loss commenced on October 6, 1993, the claim was made on November 17, 1993, denied on January 5, 1994, and the complaint was not filed until January 5, 1996. CBS opposed the motion, arguing that section 10350.11, which pertains to disability policies, sets a three-year statute of limitations which controls and renders the contractual limitations period unenforceable.

The trial court granted the motion, finding the action was time-barred under the contractual limitations provision. CBS filed a timely appeal.

DISCUSSION

I

As we have stated, the primary question is whether the policy at issue is a disability policy under California law. If it is, it is governed by the three-year statute of limitations set out in section 10350.11 and the lawsuit was timely.[1] We conclude that it is not and that the trial court properly granted summary judgment based on the one-year contractual limitations period.

---

[1]Section 10350.11 provides: "Legal Actions: No action at law or in equity shall be brought to recover on this policy prior to the expiration of 60 days after written proof of loss has been furnished in accordance with the requirements of this policy. No such action shall be brought after the expiration of three years after the time written proof of loss is required to be furnished."

Section 100 lists the various classes of insurance available in California, including disability insurance and miscellaneous insurance. Cast insurance of the type provided under the policy in this case is included in the definition of miscellaneous insurance: "Miscellaneous insurance includes insurance . . . under an open policy indemnifying the producer of any motion picture, television, . . . or similar production, . . . against loss by reason of the interruption, postponement, or cancellation of such production . . . due to death, accidental injury, or sickness preventing performers, . . . from commencing or continuing their respective performance or duties; . . ." (§ 120.)

Disability insurance is defined in the statute: "Disability insurance includes insurance appertaining to injury, disablement or death resulting to the insured from accidents, and appertaining to disablements resulting to the insured from sickness." (§ 106.) Sections 10350.1 through 10350.12 set out provisions which must be included in every disability policy, unless different wording is approved by the Insurance Commissioner. (§ 10350.) These mandatory provisions relate to changes in the policy, time limits on certain defenses and incontestability clauses, grace periods, reinstatement of the policy, notice of claim, claim forms, proof of loss, time of payment of claim, payment of claims, physical examinations, limitation of actions, and change of beneficiary. ■ Disability insurance is generally classified as first party insurance which provides coverage for loss or damages sustained directly by the insured. (See *Montrose Chemical Corp.* v. *Admiral Ins. Co.* (1995) 10 Cal.4th 645, 663 [42 Cal.Rptr.2d 324, 913 P.2d 878].)

■ As Fireman's points out, CBS has made no showing that these mandatory provisions were included in the policy. ■ "While insurance contracts have special features, they are still contracts to which the ordinary rules of contractual interpretation apply. [Citation.] The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. [Citation.] If contractual language is clear and explicit, it governs. [Citation.] On the other hand, '[i]f the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it.' [Citations.] This rule, as applied to a promise of coverage in an insurance policy, protects not the subjective beliefs of the insurer but, rather, 'the objectively reasonable expectations of the insured.' [Citation.] Only if this rule does not resolve the ambiguity do we then resolve it against the insurer. [Citation.]" (*Bank of the West* v. *Superior Court* (1992) 2 Cal.4th 1254, 1264-1265 [10 Cal.Rptr.2d 538, 833 P.2d 545].)

■ CBS fails to meet Fireman's argument that this is not a disability policy. It presents a circular argument: "Contrary to Respondent's contention, a comparison of the insuring clause of the Policy under which Appellant made the claim here at issue, and the definition of 'disability insurance'

contained in Cal. Insurance Code Section 106, shows that the Policy issued by Respondent manifestly was one for 'disability insurance.' " CBS points out that the claim here was for the "injury or sickness" of Ms. Seymour, and therefore, the claim was for "disability insurance" as defined in section 106.

CBS argues that Fireman's failed to include the mandatory disability provisions in drafting the policy, and should not profit from that violation of law. We have reviewed each of the declarations submitted by CBS in opposition to the motion for summary judgment. None support an inference that CBS held a reasonable expectation that the policy is for disability insurance. In fact, none of the declarations state that CBS understood the policy to be a disability policy, or that the omission of the statutorily mandated provisions was the fault of Fireman's. There is no evidence that the policy at issue was intended to be a "disability policy" as defined in the Insurance Code. Without such evidence, CBS's argument fails.

CBS also relies on an opinion by the Attorney General issued in 1945 concerning cast insurance. (6 Ops.Cal.Atty.Gen. 33 (1945).) But, as Fireman's points out, the opinion was issued before the 1951 amendment to section 120, which included cast insurance within the definition of miscellaneous insurance, rather than as disability insurance. ■ "[O]pinions of the Attorney General are not binding, though they are entitled to considerable weight. [Citation.] More important, however, is that the opinion is not persuasive because it was given in a different context than we face." (*Andres* v. *Young Men's Christian Assn.* (1998) 64 Cal.App.4th 85, 90 [74 Cal.Rptr.2d 788].) ■ We do not find the reasoning of the Attorney General to apply, under present law, particularly since the policy does not contain the provisions which must be included in every disability policy.

CBS also cites section 121, which provides: "Except as otherwise stated, the enumeration in this chapter of the kinds of insurance in a particular class does not limit any such kind to any one of such particular classes, inasmuch as the classification of similar insurance may vary with the subject matter, risk, and connected insurances; but the fact that similar kinds of insurance occur in different classes does not extend or change the scope of any such class." This statute does not aid CBS because, as we have discussed, there is no showing of intent that the contract be considered a disability, rather than cast insurance, policy.

CBS failed to raise a triable issue of material fact as to whether the policy here is a disability policy governed by the longer three-year statute of limitations. We turn to its other arguments concerning the validity of the contractual one-year limitation.

## II

CBS argues that the contractual provision is void because it is against public policy. It cites the principle that insurance policies are to be construed in favor of coverage, and that the insurer has the burden of proving contractual limitations on coverage.

To support its argument that the limitations provision in the policy is contrary to public policy, CBS distinguishes a line of authority cited by Fireman's regarding the validity of one-year limitation of action provisions in property insurance policies. These provisions are mandated by section 2071, which sets the standard form of fire insurance policies in California. We agree with Fireman's that cases analyzing policy limitations which are mandated by statute are of little help in construing a strictly private, contractual limitations period in an area where there is no such mandate.

CBS also relies on *Frazier* v. *Metropolitan Life Ins. Co.* (1985) 169 Cal.App.3d 90 [214 Cal.Rptr. 883]. But *Frazier* makes no reference to the fire policy provisions of section 2071 reaching its conclusion that the contractual limitations provision before it was reasonable, and that section 2071 is not applicable to nonproperty casualty claims. A case is not authority for a proposition not discussed. (*Mitchell, Silberberg & Knupp* v. *Yosemite Ins. Co.* (1997) 58 Cal.App.4th 389, 395, fn. 5 [67 Cal.Rptr.2d 906].)

 In essence, CBS's public policy argument is simply a reiteration of its argument that this is a disability policy controlled by the limitations period set out in section 10350.11. It argues: "[T]he determinative factor must be the strong public policy expressed by Insurance Code section 10350.11 that the period in which to bring actions on claims arising from medical disabilities not be limited to any period shorter than three years. . . . Hence, even if CBS' claim is not deemed to be a claim to which the three-year provision of Section 10350.11 directly applies, the close analogy between CBS' claim and the 'disability' claims indisputably governed by Section 10350.11 requires that the one-year provision of Fireman's Policy may not be deemed 'reasonable' or in conformance with California public policy." Based on this reasoning, CBS argues that the trial court erred in granting summary judgment based on the one-year contractual limitations period.

We do not find this reasoning persuasive. There is nothing inherently unreasonable about the contractual limitation.

## III

██ CBS argues that Fireman's waived the right to enforce the limitations provision because it told CBS that it was continuing to investigate CBS's claim after the expiration of the one-year period. During the investigation of the claim, Fireman's did not inform CBS that it would assert a timeliness defense.

██ "Case law is clear that ' "[w]aiver is the intentional relinquishment of a known right after knowledge of the facts." [Citations.] The burden . . . is on the party claiming a waiver of a right to prove it by clear and convincing evidence that does not leave the matter to speculation, and "doubtful cases will be decided against a waiver" [citation].' [Citations.] The waiver may be either express, based on the words of the waiving party, or implied, based on conduct indicating an intent to relinquish the right. [Citation.]" (*Waller* v. *Truck Ins. Exchange, Inc.* (1995) 11 Cal.4th 1, 31 [44 Cal.Rptr.2d 370, 900 P.2d 619].)

The general rule is that denial of coverage on one ground does not waive grounds not stated in the denial unless there is clear and convincing evidence to suggest otherwise. (*Waller* v. *Truck Ins. Exchange, Inc., supra*, 11 Cal.4th at p. 31.) In order to establish waiver, CBS was required to present evidence that Fireman's either intentionally relinquished the right to enforce the limitations period, or that its acts were " 'so inconsistent with an intent to enforce the right as to induce a reasonable belief that such right has been relinquished.' [Citation.]" (11 Cal.4th at pp. 33-34.)

██ Here, Fireman's denied the claim in Ms. Dimin's letter of January 5, 1994. In July 1995, in response to CBS's request for a review of the claim, Ms. Dimin said that the claim had been considered closed by Fireman's, but that she had reviewed the file and concluded that coverage had been properly declined.

CBS did not provide a formal response to the January 1994 denial of coverage until August 11, 1995, some 19 months later. The limitations period required suit to be brought within one year of the occurrence causing loss or damage, which was October 6, 1993. After allowing for tolling before the denial of coverage, by the time CBS wrote to Fireman's in August 1995, the claim had been barred for months. CBS cannot escape the effect of the limitations provision by relying on Fireman's actions occurring months after the claim was barred. (See *Love* v. *Fire Ins. Exchange* (1990) 221 Cal.App.3d 1136, 1151 [271 Cal.Rptr. 246].) There was no showing of waiver by Fireman's during the year in which CBS could have brought suit

nor is there any assertion that tolling was renewed during the further correspondence between Fireman's and CBS.

CBS argues that it made efforts to gather production scheduling information in response to Ms Dimin's request in October 1995. CBS does not explicitly raise a claim of estoppel. If estoppel is what is meant by this argument, it still must fail. "[P]roof of estoppel requires a showing of detrimental reliance by the injured party." (*Waller* v. *Truck Ins. Exchange, Inc., supra,* 11 Cal.4th at p. 34.) There was no showing of detrimental reliance by CBS before the limitations period ran.

## IV

CBS argues that the limitations provision should not be enforced because it was not "conspicuous, clear and plain." We disagree. We have examined the policy and found that the provision is clearly set out.

## V

■ Finally, CBS argues that the limitations provision should not be applied to bar its cause of action for breach of the implied covenant of good faith and fair dealing. It relies upon *Frazier v. Metropolitan Life Ins. Co., supra,* 169 Cal.App.3d 90 and *Murphy* v. *Allstate Ins. Co.* (1978) 83 Cal.App.3d 38 [147 Cal.Rptr. 565].

We rejected a similar argument in *Velasquez* v. *Truck Ins. Exchange* (1991) 1 Cal.App.4th 712, 719-721 [5 Cal.Rptr.2d 1]. We followed *Lawrence* v. *Western Mutual Ins. Co.* (1988) 204 Cal.App.3d 565 [251 Cal.Rptr. 319] and *Abari* v. *State Farm Fire & Casualty Co.* (1988) 205 Cal.App.3d 530 [252 Cal.Rptr. 565]: "The *Lawrence* and *Abari* decisions evince a trend by the appellate courts to limit the exemption from the limitations clause set forth in *Murphy* and *Frazier* to the facts of those cases. [Citations.] That exemption applies only where the events constituting bad faith occur after initial policy coverage. Where denial of the claim in the first instance is the alleged bad faith and the insured seeks policy benefits, the bad faith action is on the policy and the limitations provision applies." (*Velasquez* v. *Truck Ins. Exchange, supra,* 1 Cal.App.4th at p. 721.)

CBS's complaint alleges that Fireman's breached the covenant of good faith and fair dealing by refusing to pay benefits under the policy, refusing to make adequate investigation and by failing to provide a justifiable basis for denying coverage. This cause of action is on the policy and is barred by the limitations period.

## DISPOSITION

The judgment is affirmed.

Hastings, J., and Curry, J., concurred.